UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF TK BOAT RENTALS, LLC, AS OWNER AND OPERATOR OF THE M/V IDA PETITIONING FOR EXONERATION FROM OR LIMITATIONS OF LIABILITY | CIVIL ACTION<br><br>NO: 17-1545 c/w<br>17-2446<br>17-3657<br><br>SECTION: "R" (4) |

ORDER

Before the Court is a **Motion to Compel Witness Statements Taken by TK Boat Rentals, LLC (R. Doc. 40)** filed by Chase St. Clair, Andre D. Boudreau and Geico Marine Insurance Company ("Claimants"), seeking an order from the Court compelling TK Boat Rentals, LLC ("TK") to produce the recorded statements of two witnesses taken by counsel for TK's excess insurer. The motion is opposed. R. Doc. 41. The motion was heard by oral argument on October 18, 2017.

I.      **Background**

This limitation of liability action was filed by TK Boat Rentals, LLC ("TK"), as a result of a collision between the aluminum-hulled vessel M/V MISS IDA owned and operated by Shane LeBlanc and the offshore fishing vessel M/V SUPER STRIKE owned and operated by Chase St. Clair and Andrew Boudreau. R. Doc. 1, p. 2. , and R. Doc. 20, p. 6.

Andrea D. Boudreau ("Boudreau") was operating the M/S SUPER STRIKE which was carrying six (6) passengers on a charter fishing excursion and all six passengers have made claims

1

for personal injuries against TK and Claimants. R. Doc. 5. Post incident TK in compliance with its policy conducted an investigation to determine the root cause of the incident.

According to its policy, TK is charged with taking corrective action. However, the root cause report which results from the inspection has not been completed yet. Nevertheless, the root cause report upon its completion would contain the witness statements of Joey Davis, the charter fishing captain and Larry Alleman, a fishing captain employed by the Louisiana Sportsman Outfitters, which are at issue in this motion.

The claimants during the course of the litigation propounded discovery to TK and requested production of the statements. TK objected to producing the witness statements and asserted the attorney work-product doctrine, which was set forth in its previously produced privilege log.

As a result of the objection, the subject motion has been filed. The movers contend that although the statements were taken by counsel for the excess carrier, the witness statements were required to be taken as part of TK's accident investigation procedure, regardless of whether TK anticipated litigation, thus they are not protected under the work product doctrine. TK in contrast, contends that while the statements were not taken at its direction, the statements taken by counsel for the excess insurer were taken for TK's benefit in the litigation, such that it is protected by the work product doctrine.

**II.   Standard of Review**

Considerations of the work-product doctrine are governed by federal law. *Dunn v. State Farm Fire & Casualty Co.,* 927 F.2d 869, 875 (5th Cir.1991). The work-product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles,* 422 U.S. 225, 238 n. 11 (1975). Federal Rule of Civil Procedure 26(b)(3) protects against the discovery of

"work product," defined as documents and tangible things that have been prepared in anticipation of litigation or for trial by or for a party or a party's representative, including the party's consultant. The burden of demonstrating applicability of work product protection rests on the party invoking it. *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.,* 768 F.2d 719, 721 (5th Cir.1985). A court must initially determine whether the documents were prepared in anticipation of litigation; the mere fact that litigation eventually ensues does not, alone, protect all documents related to the subject matter of the litigation. *Binks Mfg. Co. v. Nat'l Presto Indus. Inc.,* 709 F.2d

Rule 26(b)(3) regulates the scope of the allowable discovery of attorney work product and instructs the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed.R.Civ.P. 26(b)(3). A party may only obtain discovery of documents prepared in anticipation of litigation or for trial upon showing that the party seeking discovery has (1) substantial need of the materials to prepare for his or her case and (2) that the party cannot obtain the substantial equivalent of the materials by other means without undue hardship. *Id.* The "work-product rule accords special protection to work product revealing the attorney's mental processes." *Herwig v. Marine Shale Processors, Inc.,* Civ. A. No. 92–2753, 1994 WL 10156 (E.D.La. Jan. 11, 1994).

### III. Analysis

The mover contends that the witness statements were collected as part of TK's accident investigation procedures, they should be produced and nor were they included in the ongoing TK Supervisor's Incident Report which was produced. Movers contend that the information contained in the witness statements will be used by the Incident Review Committee to ensure that corrective actions are implemented and communicated to TK employees to prevent a similar accident. They also further points out that TK has not objected to producing the final Supervisor's Incident Report

or when completed, just the two witness statements nor have they objected to producing its Root Cause Analysis.

TK contends that while the statement of Captain Shane LeBlanc was taken as a part of its ordinary business, the statements at issue were not taken by TK or anyone acting at its instruction, they were taken by its excess carriers' counsel for TK's benefit. TK points out further that both statements were taken after litigation commenced and the statements were taken for the purpose of assisting with litigation as evidenced by (1) the statements themselves and (2) the affidavit of the excess carriers' counsel.

Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel and counsel's involvement in the generation of the document and whether it was a routine practice to prepare that type of document versus whether the document was instead prepared in response to a particular circumstance. *See Piatkowski,* 2000 WL 1145825 at *2; *Electronic Data Systems Corp. v. Steingraber,* No. 02–CV–0225, 2003 WL 21653414 (E.D.Tex. July 9, 2003). However, the mere fact that a defendant anticipates litigation resulting from an incident does not automatically insulate investigative reports from discovery as work-product. *Carroll v. Praxair, Inc.,* No. 05–CV–0307, 2006 WL 1793656 (W.D. La. Jun 28, 2006), *see also Janicker v. George Washington Univ.,* 94 F.R.D. 648, 650 (D.D.C.1982) ("The fact that a defendant anticipates the contingency of litigation resulting from an accident or an event does not automatically qualify an 'in house' report as work product."). "If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation" *Piatkowski,* 2000 WL 1145825 at *2.I *Chevron Midstream Pipelines LLC, et. al v. Setton Towing LLC, et.al,* 2015 WL 65357 (E.D. La. January 5, 2015)

The mere contingency that litigation may result is not determinative. If in connection with an accident or an event, a business entity in the ordinary course of business conducts an investigation for its own purposes, the resulting investigative report is produced in civil pre-trial discovery. *Carroll,* 2006 WL 1793656 at *2 (citing *Binks Manufacturing Co. v. National Presto Industries, Inc.,* 709 F.2d 1109, 1119 (7th Cir.1983).

The evidence shows that TK has an Accident Reporting and Investigation (ARI) policy which provides for the investigation of all work-related accidents, injuries and near miss incidents involving its employees and other people. Its policy also provides for the investigation of any significant damage to company property and includes a root cause analysis process. (Rec. Doc. 40.1, TK Boats-206) TK's policy provides that the incident investigations will result in corrective actions and individuals would be assigned responsibilities relative to the corrective actions and would be required to tract to closure. (Id.)

The ARI policy requires that within 24 hours of an incident, a Supervisor's Incident Report (SIR) must be completed and should include the vehicle accident, injured person statement, witness statement, near miss and equipment damage. (Rec. Doc. 40-1, TK Boats 207, Rec. do. 40-4, Malish Email 03/17/17) The ARI policy further provides that the incident will be reviewed by the accident review committee to ensure corrective actions are effectively implemented, lessons learned communicated and system level root causes addressed to mitigate and prevent a similar incident. (Rec. 40-1, TK Boats 210)

The evidence further shows that the SIR was completed and produced. However, the only witness statement included in the report is that of the captain and Andre Boudreau and not Joey Davis or Larry Alleman. These statements were required in connection with the ARI policy and should have been included in the SIR. However, in response to written discovery which sought

5

the production of all witness statements, TK responded that it had produced the statements that were not subject to privilege. It did however indicate that "TK's counsel has obtained two statements and directed the claimants to its privilege log which was produced. (Rec. Doc. 40-3, Req. for Prod.8)

The privilege log produced in connection with the discovery response clearly indicates that the statements were taken by Excess Insurer's counsel, Jason Kenny on April 5, 2017. In response to interrogatories, it was indicated that both Davis and Alleman have knowledge regarding the course of Captain Andrea Boudreau and the ordinary actions of charter boat captains in the Mississippi River. (Rec. Doc. 40-5, Ans. Interrog. 2)

The statements were taken 10 days after the claimants were provided the SIR and also communication from their counsel's acknowledging his representation of them. The simple fact that the statements were taken after the lawsuit was filed is not in and of itself probative on this issue. The Court notes that Mr. Kenney provided an affidavit indicating that he took the statement for the benefit of his client in defense of the excess claim and that he had no knowledge of the root cause analysis or TK's policies. (Rec. doc. 41-1)

The Court finds it interesting that counsel for the excess carrier would take these witness statements rather than counsel for the primary coverage when the excess carrier is not a party to this action. Also, the Court notes that counsel for TK conceded that the only reason counsel for the excess carrier took the statement is because the witnesses were comfortable with him because he was formerly a captain.

Additionally, in considering that witness statements are a standard requirement for TK's accident investigation risk analysis, the Court finds that these statements were taken for the

6

business purpose of mitigating future accidents and are not protected by the work product doctrine and could not be shielded by excess counsel.

### IV.    Conclusion

Accordingly,

**IT IS ORDERED** that **Chase St. Clair, Andre D. Boudreau and Geico Marine Insurance Company's Motion to Compel Witness Statements Taken by TK Boat Rentals, LLC (R. Doc. 40)** is **GRANTED.**

**IT IS FURTHER ORDERED** that TK Boat Rentals, LLC, shall produce the statements of Joey Davis and Larry Alleman, taken by Jason Kenney, **no later than seven (7) days from the signing of this Order.**

New Orleans, Louisiana, this 14th day of November 2017.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**