# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: IN THE MATTER OF THE COMPLAINT OF TK BOAT RENTALS, LLC, AS OWNER AND OPERATOR OF THE M/V MISS IDA PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO. 2:17-cv-01545<br>c/w 17-02446 and c/w 17-03657<br><br>SECTION "R" MAG. DIV. (4)<br><br>JUDGE VANCE<br><br>MAGISTRATE ROBY |
| ***Pertains to All Actions*** | |

## MEMORANDUM OF DEFENDANT, EXTREME FISHING, L.L.C., IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

### Introduction

This consolidated action involves two separate Complaints for Exoneration From or Limitation of Liability (Nos. 17-01545 and 17-03657), a Complaint for Damages filed outside of the original limitation proceeding in a separate action (No. 17-02446), and multiple claims, cross-claims, and Rule 14(c) tenders filed within the Limitation Proceedings that all arise out of a vessel collision between the M/V MISS IDA and the M/V SUPER STRIKE that occurred on the Mississippi River on February 12, 2017, during a period of restricted visibility. At the time of the collision, Plaintiffs[1] were passengers aboard the M/V SUPER STRIKE while the boat was heading outbound for a charter fishing trip. See Complaint for Damages at ¶¶15–16 (Rec. Doc. 1 in consolidated action No. 17-02446).

---

[1] The original Plaintiffs were Patrick A. Beck, individually and as the father and administrator of the estate of his minor son, C.D.B., Tracy L. Edwards, Justin McCarthy, Michael Harrell, and Charles N. "Nick" Siria. See Complaint for Damages at ¶¶1–5 (Rec. Doc. 1 in consolidated action No. 17-02446).

Plaintiffs originally sued numerous defendants to recover damages for injuries allegedly suffered in the collision, including Troy Wetzel (hereinafter sometimes "Mr. Wetzel" or "Wetzel") and Extreme Fishing, L.L.C. ("Extreme Fishing"), <u>see</u> Complaint for Damages at pp. 2–3 ¶¶8–9, p.7 ¶24 (Rec. Doc. 1 in consolidated action No. 17-02446),[2] even though neither Mr. Wetzel nor Extreme Fishing owned the vessels that were involved in the collision, <u>see</u> Order and Reasons at p. 11 (Rec. Doc. 87 in No. 17-01545). In this respect, of the two vessels involved in the collision, the M/V IDA was owned and operated by TK Boat Rentals, LLC ("TK Boat Rentals"), <u>see</u> Complaint for Exoneration From or Limitation of Liability at ¶1 (Rec. Doc. 1 in No. 17-01545), and the M/V SUPER STRIKE was owned by Chase St. Clair and operated by Andre Boudreau (hereinafter sometimes "Mr. Boudreau," "Captain Boudreau," or "Boudreau"), <u>see</u> Complaint for Exoneration From or Limitation of Liability at p. 1 ¶¶1–2 (Rec. Doc. No. 1 in No. 17-03657). Specifically, Plaintiffs allege that the vessel on which they were passengers—the M/V SUPER STRIKE—was "being operated by Defendant, Andre D. Boudreau, in the course and scope of his employment with Mr. Wetzel, d/b/a Louisiana Offshore Fishing Charters, and/or Extreme Fishing." Complaint for Damages at p. 4 ¶15 (Rec. Doc. 1 in consolidated action No. 17-02446). Plaintiffs further allege that the "collision and the injuries and damages to Plaintiffs were legally and proximately caused

---

[2] Plaintiffs have also filed claims against Troy Wetzel and Extreme Fishing, L.L.C. in the Limitation Proceeding brought by TK Boat Rentals, <u>see</u> Answer and Claims at p. 9 ¶¶8–9, p. 13 ¶25 (Doc. 5 in No. 17-1545), and the Limitation Proceeding brought by Chase St. Clair and Andre Boudreau (consolidated action No. 17-3657), <u>see</u> Answer and Claims at p. 10 ¶¶9–10, p. 15 ¶25 (Rec. Doc. 17 in No. 17-1545). The allegations in Plaintiffs' original Complaint for Damages (Rec. Doc. 1 in consolidated action No. 17-02446) against Troy Wetzel and Extreme Fishing, and the allegations against Troy Wetzel and Extreme Fishing in the claims submitted by Plaintiffs in the two Limitation Proceedings (Rec. Docs. 5 and 17 in No. 17-1545) are for all intents and purposes the same. <u>Compare</u> Complaint for Damages at pp. 3–7 ¶¶12-24 (Rec. Doc. 1 in Consolidated Action No. 17-02446) <u>with</u> Answer and Claims at pp. 10-13 ¶¶13-25 (Rec. Doc. 5 in No. 17-1545) and Answer and Claims at pp. 11-15 ¶¶13-25 (Rec. Doc. 17 in No. 17-1545).

by the fault, including negligence of Defendants, TK Boat Rentals, Andre D. Boudreau, Troy Wetzel, d/b/a Louisiana Offshore Fishing Charters, Extreme Fishing, and Chase B. St. Clair, and their officers, agents, employees, and those for whom they are legally responsible, as well as by the unseaworthiness of the aforesaid fishing vessel and the M/V MISS IDA." Complaint for Damages at p. 7 ¶24 (Rec. Doc. 1 in consolidated action No. 17-02446).

On the other hand, Defendant and Limitation Plaintiff, TK Boat Rentals, as the owner and operator of the M/V MISS IDA, and in response to Plaintiffs' Complaint for Damages (Rec. Doc. 1 in consolidated action No. 17-02446), and to the claims asserted by Plaintiffs in TK Boat Rentals' Limitation Proceeding (Doc. 5 in No. 17-01545), has attempted to tender Plaintiffs' claims against it to Troy Wetzel and Extreme Fishing. See Answer to Claim, Complaint, Cross-Claim and 14(c) Tender at pp. 9–10 ¶¶4–5, p. 12 ¶¶19, 21–22 (Doc. 18 in No. 17-01545).[3] TK Boat Rentals has also specifically asserted a claim against Troy Wetzel and Extreme Fishing that they are liable for Andre Boudreau's negligence in causing the collision as his employer, see Answer to Claim, Complaint, Cross-Claim and 14(c) Tender at p. 12 ¶¶20–21 (Rec. Doc. 18 in No. 17-01545), and that they "negligently entrusted the M/V SUPER STRIKE and the passengers to Andre Boudreau, without determining whether Andre Boudreau was competent for the work requested of him or whether he was competent to run the M/V

---

[3] TK Boat Rentals, in a separate filing, has also sought to tender all claims filed against it in its Limitation Proceeding (No. 17-1545) to Troy Wetzel and Extreme Fishing under Fed. R. Civ. P. 14(c), and further seeks indemnity and contribution against Troy Wetzel and/or Extreme Fishing. See Answer to Claim, Cross-Claim, and 14(c) Tender at p. 3 ¶¶3–4, pp. 4–5 ¶¶10–13 (Rec. Doc. 35 in No. 17-1545). TK Boat Rentals' claims against Troy Wetzel and Extreme Fishing in the later-filed document (Rec. Doc. 35 in No. 17-1545) effectively mirror its claims against Troy Wetzel and Extreme Fishing that were earlier filed (Rec. Doc. 18 in No. 17-1545).

SUPER STRIKE in the fog," Answer to Claim, Complaint, Cross-Claim and 14(c) Tender at p. 12 ¶22 (Rec. Doc. 18 in No. 17-01545).

Despite the foregoing, as a result of prior motion practice by Defendants, Troy Wetzel and Extreme Fishing, the claims in these proceedings against Wetzel and Extreme Fishing have been substantially narrowed. First, this Court has dismissed the unseaworthiness claims of all Plaintiffs against Defendants, Mr. Wetzel and Extreme Fishing. <u>See</u> Order and Reasons at pp. 5–6 (Rec. Doc. 84 in No. 17-1545); Judgment (Rec. Doc. 103 in No. 17-01545). Second, this Court has dismissed the claims of Plaintiffs, Tracy Edwards and Charles "Nick" Siria, in their entirety, against Defendants, Troy Wetzel and Extreme Fishing. <u>See</u> Order and Reasons at pp. 6–12 (Rec. Doc. 84 in No. 17-01545); Judgment (Rec. Doc. 103 in No. 17-01545). Third, this Court has also dismissed the claims of all parties against Defendant, Troy Wetzel, in his individual capacity. <u>See</u> Order and Reasons at pp. 5–10 (Rec. Doc. 87 in No. 17-01545). Finally, this Court has denied TK Boat Rentals' motion for partial summary judgment that sought a ruling that, at the time of the collision, Andre Boudreau was an employee of Troy Wetzel or Extreme Fishing. <u>See</u> Order and Reasons at p. 11 (Rec. Doc. 87 in No. 17-01545).

With this procedural background in mind, and for the reasons set forth more fully below, Defendant, Extreme Fishing, now respectfully moves the Court to dismiss, on summary judgment, the remaining claims of all parties against it arising out of Andre Boudreau's alleged negligence in operating the M/V SUPER STRIKE, <u>see</u> Complaint for Damages at p. 7 ¶24 (Rec. Doc. 1 in consolidated action No. 17-02446); Answer to Claim, Complaint, Cross-Claim and 14(c) Tender at p. 12 ¶¶20–21 (Rec. Doc. 18 in No.

17-01545), and TK Boat Rentals' claim against it for negligent entrustment, <u>see</u> Answer to Claim, Complaint, Cross-Claim and 14(c) Tender at p. 12 ¶22 (Rec. Doc. 18 in No. 17-01545).

## Basic Facts

Former Defendant, Troy Wetzel, in his individual capacity, owns three boats: KINGFISH, KINGFISH II, and K3. <u>See</u> Deposition of Troy Wetzel ("Wetzel Depo.") at p. 9 ln. 10-21 (KINGFISH); p. 10 ln. 8-19 (KINGFISH II); p. 12 ln. 25, p. 13 ln. 1-16 (K3) (attached as Exhibit A). Approximately fifteen years ago, Mr. Wetzel formed a single member limited liability company named Extreme Fishing, L.L.C. ("Extreme Fishing"). <u>See</u> Wetzel Depo. at p. 8 ln. 11-13, 19-23 (attached as Exhibit A). Mr. Wetzel is the only member of Extreme Fishing. <u>See</u> Wetzel Depo. at p. 8 ln. 18-20 (attached as Exhibit A). The sole business of Extreme Fishing is to conduct charter fishing trips out of Venice, Louisiana. <u>See</u> Wetzel Depo. at p. 9 ln. 5-9 (attached as Exhibit A). In furtherance of this purpose, Extreme Fishing does business under the trade name of Louisiana Offshore Fishing Charters. <u>See</u> Wetzel Depo. at p. 7 ln. 14-25; p. 8 ln. 1-12; p. 58 ln. 16-19 (attached as Exhibit A). In order for Extreme Fishing to conduct its charter fishing trips, Extreme Fishing charters Mr. Wetzel's three boats on a bareboat or demise charter basis. <u>See</u> Wetzel Depo. at p. 9 ln. 10-21; p. 10 ln. 8-19; p. 13 ln. 5-10 (attached as Exhibit A). Mr. Wetzel maintains insurance on the vessels he charters to Extreme Fishing, and those policies have been produced in this action. <u>See, e.g.</u>, Ltr. from Michael W. McMahon to all counsel dated Nov. 27, 2017 (attached as Exhibit B).

Extreme Fishing has no employees, but rather uses six or seven individual captains as independent contractors to operate the boats that it charters from Mr.

Wetzel.  <u>See</u> Wetzel Depo. at p. 11 ln. 3-24 (attached as Exhibit A).  In this respect, Defendant, Andre Boudreau, was one of the independent-contractor captains that Extreme Fishing used to operate the chartered boats.  <u>See</u> Wetzel Depo. at p. 11 ln. 15-24 (attached as Exhibit A).  These independent-contractor captains generally move from boat to boat working for many different charter fishing companies in Venice, as demand requires, and they do not work exclusively for any one company.  <u>See</u> Wetzel Depo. at p. 15 ln. 16-25; p. 16 ln. 1-25; p. 17 ln. 1-2 (attached as Exhibit A); Deposition of Andre Boudreau ("Boudreau Depo.") at p. 253 ln. 14-25; p. 254 ln. 1-10 (attached as Exhibit C).  When Andre Boudreau was an independent-contractor captain aboard one of Extreme Fishing's chartered boats, he would be working for Extreme Fishing, and would be paid by Extreme Fishing.  <u>See</u> Wetzel Depo. at p. 66 ln. 21-25; p. 67 ln. 1-11 (attached as Exhibit A).  Andre Boudreau, however, did not draw a regular salary from Extreme Fishing, <u>see</u> Wetzel Depo. at p. 18 ln. 3-16 (attached as Exhibit A); instead, Boudreau would receive the normal Captain's fee in Venice of $500 a day when he was a captain on a vessel chartered by Extreme Fishing, <u>see</u> Wetzel Depo. at p. 19 ln. 2-6 (attached as Exhibit A).  In this respect, Andre Boudreau testified that he received a Form 1099 because he was not an employee.  <u>See</u> Boudreau Depo. at p. 63 ln. 2-10 (attached as Exhibit C).  Troy Wetzel is also a licensed boat captain, and he likewise served as a captain of Extreme Fishing's chartered vessels on some fishing trips.  <u>See</u> Wetzel Depo. at p. 64 ln. 10-14 (attached as Exhibit A).

Normally, when a charter fishing trip is booked with Extreme Fishing, Troy Wetzel receives a telephone call from a customer, and he tells the customer what boat they will be on and the customer sends in a deposit.  <u>See</u> Wetzel Depo. at p. 43 ln. 19-22

(attached as Exhibit A). In early February of 2017, Plaintiff Patrick Beck telephoned Troy Wetzel on short notice to schedule a charter fishing trip for February 12, 2017, and there was no time to obtain a deposit from Mr. Beck. See Wetzel Depo. at p. 43 ln. 24-25; p. 44 ln. 1-3; p. 64 ln. 3-5; p. 65 ln. 5-11 (attached as Exhibit A). Mr. Wetzel informed Mr. Beck that he had a boat available for a charter fishing trip, and that Mr. Beck's fishing trip would be on the vessel KINGFISH. See Wetzel Depo. at p. 66 ln. 3-5 (attached as Exhibit A). Because Mr. Wetzel was caring for his parents at the time of Mr. Beck's trip, Andre Boudreau was going to be the captain for Mr. Beck's charter fishing trip and not Mr. Wetzel. See Wetzel Depo. at p. 64 ln. 15-21 (attached as Exhibit A).

On February 11, 2017—the day before Mr. Beck's fishing trip—the KINGFISH suffered an engine casualty and was no longer available to be used for Mr. Beck's trip. See Boudreau Depo. at p. 73 ln. 7-14 (attached as Exhibit C); Wetzel Depo. at p. 44 ln. 4-10 (attached as Exhibit A). Andre Boudreau, who was the Captain aboard the KINGFISH at the time of the casualty, informed Mr. Wetzel of the extent of the problem with the KINGFISH, and Mr. Wetzel, knowing that the KINGFISH could not be repaired in time, asked Boudreau if he knew of any other boats that could be used for Mr. Beck's fishing trip the next morning. See Wetzel Depo. at p. 42 ln. 15-25 (attached as Exhibit A). Andre Boudreau then contacted Chase St. Clair, who was the owner of the M/V SUPER STRIKE, to inquire as to whether the SUPER STRIKE would be available for Mr. Beck's fishing trip the next morning on February 12, 2017, and was told that the vessel was available. See Boudreau Depo. at p. 73 ln. 15-25 (attached as Exhibit C). Mr. St. Clair had no conversations with Troy Wetzel about the availability or use of the

SUPER STRIKE.  <u>See</u> Deposition of Chase St. Clair, Sr. ("St. Clair Depo.") at p. 48 ln. 11-23 (attached as Exhibit D); Wetzel Depo. at p. 44 ln. 11-13 (attached as Exhibit A). After Andre Boudreau informed Mr. Wetzel that a boat was available, Mr. Wetzel contacted Mr. Beck to tell him that the boat they were supposed to use for his fishing trip the next day was no longer available, but that Mr. Wetzel could give the fishing trip to another company, and they would take Mr. Beck's group fishing.  <u>See</u> Wetzel Depo. at p. 41 ln. 19-25; p. 42 ln. 1-11; p. 43 ln. 1-18; p. 44 ln. 4-10 (attached as Exhibit A); Boudreau Depo. at p. 68 ln. 24-25; p. 69 ln. 1-22; p. 73 ln. 7-14 (attached as Exhibit C). Mr. Beck agreed to the use of a different boat for his fishing trip, and Mr. Wetzel informed Andre Boudreau.  <u>See</u> Wetzel Depo. at p. 43 ln. 13-18; p. 44 ln. 4-10 (attached as Exhibit A).  Boudreau had a key to Chase St. Clair's shed where the M/V SUPER STRIKE was stored, and he went and picked up the vessel and then brought the vessel to Venice.  <u>See</u> Boudreau Depo. at p. 73 ln. 22-25; p. 201 ln. 10-25; p. 202 ln. 1 (attached as Exhibit C).

On February 12, 2017, with Troy Wetzel still in New Orleans, the M/V SUPER STRIKE got underway from Venice, Louisiana, at approximately 6:40 a.m. with Captain Boudreau, Mr. Beck, and the other plaintiffs aboard, with visibility reduced to 50-75 yards due to fog.  <u>See</u> Boudreau Depo. at p. 66 ln. 4-23; p. 84 ln. 1-14; p. 90 ln. 1-22 (attached as Exhibit C).  Captain Boudreau had no conversations with Mr. Wetzel or Mr. St. Clair regarding the reduced visibility prior to getting underway, and the decision to actually get the boat underway was solely that of Captain Boudreau.  <u>See</u> Boudreau Depo. at p. 93 ln. 16-21; p. 94 ln. 5-7 (attached as Exhibit C); Wetzel Depo. at p. 50 ln. 2-15 (attached as Exhibit A).  Captain Boudreau testified that once the M/V SUPER

STRIKE backed away from the dock, the responsibility for the safety of the vessel and for providing the customers with a safe trip rested solely with him.  See Boudreau Depo. at p. 285 ln. 11-25; p. 286 ln. 1-2 (attached as Exhibit C).  A short time after the SUPER STRIKE reached the Mississippi River, the M/V IDA collided with the SUPER STRIKE.  See Complaint for Damages at ¶16 (Rec. Doc. 1 in consolidated action No. 17-02446).  These consolidated actions followed.

1.  **TK Boat Rentals' claim against Extreme Fishing for negligent entrustment is properly dismissed on summary judgment as Extreme Fishing was not the owner of the M/V SUPER STRIKE, and the evidence overwhelmingly shows that Andre Boudreau was an experienced Coast Guard-licensed Captain who had operated the M/V SUPER STRIKE on multiple occasions prior to the collision, and had never been involved in any reportable incidents before.**

As briefly stated above, TK Boat Rentals seeks to recover against Extreme Fishing under a theory of negligent entrustment.  Specifically, TK Boat Rentals alleges the following:

22.

Troy Wetzel d/b/a Louisiana Offshore Fishing Charters and/or Extreme Fishing, LLC are further responsible for the collision and resulting damages because Troy Wetzel d/b/a Louisiana Offshore Fishing Charters and/or Extreme Fishing, LLC negligently entrusted the M/V SUPER STRIKE and the passengers to Andre Boudreau, without determining whether Andre Boudreau was competent for the work requested of him or whether he was competent to run the M/V SUPER STRIKE in the fog.

Answer to Claim, Complaint, Cross-Claim and 14(c) Tender at p. 12 ¶22 (Rec. Doc. 18 in No. 17-1545).

Under general maritime law, "the essential thrust of the tort of negligent entrustment is that a shipowner can be held liable for negligent entrustment only if he knows or has reason to know that the person being entrusted is incapable of operating

the vessel safely." Joyce v. Joyce, 975 F.2d 379, 385 (7th Cir. 1992). Here, as this Court has previously recognized, Extreme Fishing was not even the owner of the M/V SUPER STRIKE that was being operated by Andre Boudreau. See Order and Reasons at p. 11 (Rec. Doc. 87 in No. 17-01545). Moreover, the evidence in this case shows that Andre Boudreau has been licensed by the U.S. Coast Guard since 2014 as an Operator of Uninspected Passenger Vessel (OUPV 6-Pack) of less than 100 gross tons and limited to six or less passengers for hire. See Boudreau Depo. at p. 14 ln. 24-25, p. 15 ln. 1-16, p. 245 ln. 11-25, p. 246 ln.1 & Exhibit No. 27 (at Answer to Interrogatory No. 13) attached thereto (attached as Exhibit C). Prior to the collision at issue in this case, Andre Boudreau had never been involved in a reportable incident to the U.S. Coast Guard. See Boudreau Depo. at p. 251 ln. 4-9 (attached as Exhibit C). Boudreau has also never had his license revoked or suspended by the Coast Guard. See Boudreau Depo. at p. 20 ln. 5-7 (attached as Exhibit C).

The evidence also shows that prior to starting commercial fishing and obtaining his Coast Guard license, Andre Boudreau had over five years of experience privately fishing offshore using the same type of boat, the same type of equipment, and traveling the same area. See Boudreau Depo. at p. 243 ln. 15-25, p. 244 ln. 1-19 (attached as Exhibit C). In fact, Boudreau testified that between 2009 and 2014 when he received his Coast Guard license, he had navigated the Mississippi River approximately 65 to 100 times per year. See Boudreau Depo. at p. 243 ln. 10-25, p. 244 ln. 1-19 (attached as Exhibit C). Boudreau also testified that he has attended and successfully passed various schools and courses, including The Captain School, see Boudreau Depo. at p. 15 ln. 17-25, p. 16 ln. 1 & Exhibit 24 attached thereto (attached as Exhibit C), and the

Boater Safety Course in 2013 prior to getting his license, see Boudreau Depo. at p. 246 ln. 3-25, p. 247 ln. 1-20 & Exhibit 42 attached thereto (attached as Exhibit C).  Finally, Andre Boudreau testified that prior to the collision at issue he had operated the M/V SUPER STRIKE approximately nine times while running charter fishing trips for a company called Intensity Outfitters that was owned by Josh Bodenheimer.  See Boudreau Depo. at p. 45 ln. 24-25, p. 46 ln. 1-25, p. 47 ln. 1-25, p. 48 ln. 1-25, p. 49 ln. 1-25, p. 50 ln. 1-25, p. 51 ln. 1-25, p. 52 ln. 1, p. 268 ln. 8-25, p. 269 ln. 1-25, p. 270 ln. 1-24 & Exhibit 28 attached thereto (attached as Exhibit C).

Given the foregoing, there is simply no basis for a claim of negligent entrustment against anyone in this case, let alone Extreme Fishing who was not even the owner of the M//V SUPER STRIKE.  Accordingly, TK Boat Rentals' claim against Extreme Fishing for negligent entrustment wholly lacks merit and is properly dismissed on summary judgment.

**2.** **The claims of Plaintiffs and TK Boat Rentals seeking to hold Extreme Fishing liable for the actions of Andre Boudreau in his operation of the M/V SUPER STRIKE fail as a matter of law because there is no evidence that Boudreau was acting as an employee of Extreme Fishing at the time of the collision.**

Next, as stated above, Plaintiffs and TK Boat Rentals generally seek to hold Defendant, Extreme Fishing, vicariously liable for the alleged negligence of Defendant, Andre Boudreau, in his operation of the M/V SUPER STRIKE because Plaintiffs and TK Boat Rentals claim that Andre Boudreau was Extreme Fishing's employee at the time of the collision.  Specifically, Plaintiffs generally allege in their Complaint for Damages:

13.

Prior to February 12, 2017, Plaintiffs contracted or entered into an agreement with Defendant, Troy Wetzel, d/b/a Louisiana Offshore Fishing

Charters, and/or Defendant, Extreme Fishing, to charter offshore fishing vessels in connection with their fishing trip to Louisiana. Pursuant to this contract or agreement, these Defendants were to also furnish a crew to operate these vessels.

14.

On the morning of February 12, 2017, Plaintiffs were supposed to be taken to fish offshore in the Gulf of Mexico on a fishing vessel owned and operated by Mr. Wetzel, d/b/a Louisiana Offshore Fishing Charters, and/or by Extreme Fishing. However, this fishing vessel was inoperable. Accordingly, upon information and belief, Mr. Wetzel or someone on his behalf entered into an agreement with Defendant, Chase B. St. Clair, or his representative to use one of Mr. St. Clair's fishing vessels to take Plaintiffs to fish offshore that day, and Mr. St. Clair was to be paid for the use of his fishing vessel for this purpose.

15.

Due to the aforesaid events, in the morning hours on February 12, 2017, Plaintiffs were passengers on a 32-foot catamaran offshore fishing vessel owned by Mr. St. Clair and being operated by Defendant, Andre D. Boudreau, in the course and scope of his employment with Mr. Wetzel, d/b/a Louisiana Offshore Fishing Charters, and/or Extreme Fishing.

16.

As the aforesaid fishing vessel was traveling south in the lower Mississippi River near Main Pass and within the jurisdiction of this Honorable Court in extremely foggy conditions which severely limited visibility, it experienced a problem with one of its engines. Due to the problem with this engine, Captain Boudreau steered the fishing vessel, which had been close to the west bank of the River, to the left, or in an easterly direction. As this vessel was slowly crossing the River perpendicular to vessel traffic, it violently collided with the M/V MISS IDA, a 42-foot inland crew boat owned by Defendant, TK Boat Rentals, and being operated by Shane LeBlanc in the course and scope of his employment with TK Boat Rentals, which was traveling north near the east bank of the River….

\*   \*   \*

24.

The aforesaid incident and collision and the injuries and damages to Plaintiffs were legally and proximately caused by the fault, including

negligence, of Defendants, TK Boat Rentals, Andre D. Boudreau, Troy Wetzel, d/b/a Louisiana Offshore Fishing Charters, Extreme Fishing, and Chase B. St. Clair, and their officers, agents, employees, and those for whom they are legally responsible, as well as by the unseaworthiness of the aforesaid fishing vessel and the M/V MISS IDA.

Complaint for Damages at ¶¶ 13–16, 24 (Rec. Doc. 1 in consolidated action No. 17-02446).  TK Boat Rentals similarly makes the following claim against Extreme Fishing seeking to hold Extreme Fishing liable for the actions of Andre Boudreau:

20.

The collision and resulting damages were caused through the fault of Andre Boudreau as a result of his negligence, his inadequate training, his improper navigation of the M/V SUPER STRIKE, and his inadequate actions to avoid a collision.

21.

Troy Wetzel d/b/a Louisiana Offshore Fishing Charters and/or Extreme Fishing, LLC, as the employer of Andre Boudreau, are responsible for the collision and resulting damages.

Answer to Claim, Complaint, Cross-Claim and 14(c) Tender at p. 12 ¶¶20–21 (Doc. 18 in No. 17-1545).  As explained herein, the negligence claims of Plaintiffs and TK Boat Rentals against Extreme Fishing, however, fail at their most fundamental level because there is no evidence that Andre Boudreau was working as an employee for Extreme Fishing at the time of the incident.

The U.S. Fifth Circuit has stated that "[c]ontrol is the most important factor in identifying an employment relationship under the general maritime law, especially where, as here, the plaintiff seeks to impose vicarious liability."  Johnson v. GlobalSantaFe Offshore Services, Inc., 799 F.3d 317, 324 (5th Cir. 2015) (quotation marks and citation omitted).  In other words, the Fifth Circuit has found "in the maritime context, that respondeat superior liability is predicated upon the control inherent in a

master-servant relationship." GlobalSantaFe Offshore Services, Inc., 799 F.3d at 321 (quotation marks and citation omitted). Looking to the common law of agency, the Fifth Circuit has further stated that "the existence of an employment relationship hinges on the hiring party's right to control the manner and means by which the product is accomplished." GlobalSantaFe Offshore Services, Inc., 799 F.3d at 321 (quotation marks and citation omitted). The Fifth Circuit has also recognized certain factors that are indicative of an employment relationship "including 'the extent of control which, by the agreement, the master may exercise over the details of the work;' 'whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;' and 'whether or not the parties believe they are creating the relation of master and servant.'" GlobalSantaFe Offshore Services, Inc., 799 F.3d at 322 (quoting from Restatement (Second) of Agency §220(2)). Finally, the mere payment of wages is not dispositive of the issue of control. See GlobalSantaFe Offshore Services, Inc., 799 F.3d at 324.

Applying the foregoing law, Troy Wetzel testified at his deposition that once his vessel, the M/V KING FISH, was not available to be used for Mr. Beck's fishing trip due to an engine casualty, the fishing trip was given away to Mr. Boudreau. See Wetzel Depo. at p. 76 ln. 15-23 (attached as Exhibit A). Wetzel also testified that after Mr. Beck's trip was given away to Mr. Boudreau that it was up to both Mr. Boudreau and the owner of the vessel that was going to be used for the fishing trip to determine the cost that Mr. Beck would be charged for the trip. See Wetzel Depo. at p. 75 ln. 12-25, p. 76 ln. 1-7 (attached as Exhibit A). The evidence further shows that it was Mr. Boudreau, and not Mr. Wetzel, who contacted Mr. St. Clair to inquire about the use of the M/V

SUPER STRIKE for Mr. Beck's trip. <u>See</u> Boudreau Depo. at p. 73 ln. 15-25 (attached as Exhibit C); St. Clair Depo. at p. 48 ln. 11-23 (attached as Exhibit D); Wetzel Depo. at p. 44 ln. 11-13 (attached as Exhibit A). The evidence also shows that it was Andre Boudreau that picked up the M/V SUPER STRIKE and brought the vessel to Venice. <u>See</u> Boudreau Depo. at p. 73 ln. 22-25; p. 201 ln. 10-25; p. 202 ln. 1 (attached as Exhibit C).

In addition, Mr. Boudreau testified that, on the day of the incident, Mr. Wetzel did not control when he was supposed to leave the dock, the route to take to the fishing ground, the speed to use, the location to fish, or how long to fish. <u>See</u> Boudreau Depo. at p. 251 ln. 20-25, p. 252 ln. 1-5 (attached as Exhibit C). Mr. Boudreau further testified that the decision to leave the dock that morning rested solely with him, and that he was solely responsible for the safety of everybody aboard the M/V SUPER STRIKE. <u>See</u> Boudreau Depo. at p. 285 ln. 11-25, p. 286 ln. 1-2 (attached as Exhibit C). Moreover, Mr. Wetzel testified that when Andre Boudreau was captaining a boat for a fishing trip, Boudreau was responsible for "bring[ing] his own gear" and for outfitting the boat with "fighting belts, rods and reels." Wetzel Depo. at p. 21 ln. 11-20 (attached as Exhibit A); <u>see</u> Boudreau Depo. at p. 240 ln. 2-12 (attached as Exhibit C). In this respect, Andre Boudreau stated that he provided the "rods, reels, fishing nets and other fishing equipment" on the M/V SUPER STRIKE on the day of the incident, and that Chase St. Clair had provided the vessel to be used that day. <u>See</u> Boudreau Depo. at Exhibit 28 attached thereto (Answers to Interrogatory Nos. 6 & 7) (attached as Exhibit C). Finally, there is evidence that Mr. Boudreau received a Form 1099, that Mr. Boudreau has a full-time job working for his father, and that he only fishes on the weekends if he

receives enough advance notice.  See Boudreau Depo. at p. 40 ln. 13-25, p. 41 ln. 1-25, p. 42 ln. 1-25, p. 43 ln. 1-20, p. 252 ln. 24-25, p. 253 ln. 1-7 (attached as Exhibit C).

Given the foregoing, it is respectfully submitted that Plaintiffs and TK Boat Rentals cannot prove an essential element of their claim against Extreme Fishing—namely, that Andre Boudreau was an employee of Extreme Fishing at the time of the collision—because there is insufficient "indicia of control" on the part of Extreme Fishing over the conducting of the fishing trip in question and the operation of the M/V SUPER STRIKE at the time of the collision.  Consequently, Plaintiffs and TK Boat Rentals cannot prove that Extreme Fishing should be held vicariously liable for Andre Boudreau's allegedly negligent actions.  As such, the negligence claims of Plaintiffs and TK Boat Rentals against Extreme Fishing fail as a matter of law and are properly dismissed on summary judgment.

**3.**      **Summary Judgment is properly granted in favor of Extreme Fishing because Plaintiffs and TK Boat Rentals cannot show that Extreme Fishing is vicariously liable for the actions of Andre Boudreau, and because TK Boat Rentals cannot show that Extreme Fishing is liable for the tort of negligent entrustment.**

Under federal law, summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Here, as demonstrated above, Defendant, Extreme Fishing, has come forward and shown that Plaintiffs and TK Boat Rentals cannot prove essential elements of their respective claims against Extreme Fishing for negligence and for negligent entrustment.  Accordingly, Extreme Fishing respectfully requests that its motion for summary judgment be granted, and that the

remaining claims of Plaintiffs and TK Boat Rentals against Extreme Fishing be dismissed, with prejudice, each party to bear its own costs.

**Conclusion**

Based on the foregoing reasons, Defendant, Extreme Fishing, L.L.C., respectfully requests that its motion for summary judgment be granted, and that all of the remaining claims of Plaintiffs and TK Boat Rentals, LLC against it be dismissed, with prejudice, each party to bear its own costs.

Respectfully submitted,

**DAIGLE, FISSE & KESSENICH, PLC**

/s/ Kirk N. Aurandt
**MICHAEL W. McMAHON (#23987)**
**KIRK N. AURANDT (#25336)**
P.O. Box 5350
Covington, LA 70434-5350
Telephone: (985) 871-0800
Facsimile: (985) 871-0899
***Attorneys for Defendant, Extreme Fishing, L.L.C.***

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this 22nd day of May, 2018.

/s/ Kirk N. Aurandt
KIRK N. AURANDT