## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  IN THE MATTER OF THE COMPLAINT OF TK BOAT RENTALS, LLC, AS OWNER AND OPERATOR OF THE M/V MISS IDA PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO.  2:17-cv-01545<br>c/w 17-02446 and c/w 17-03657<br><br>SECTION "R" MAG. DIV. (4)<br><br>JUDGE VANCE |
| ***Pertains to All Actions*** | MAGISTRATE ROBY |

## <u>STATEMENT OF UNCONTESTED MATERIAL FACTS</u>

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Extreme Fishing, L.L.C., who, for purposes of the accompanying Motion for Summary Judgment, respectfully avers that the following material facts are not genuinely disputed:

1.     Former Defendant, Troy Wetzel, in his individual capacity, owns three boats:  KINGFISH, KINGFISH II, and K3.  <u>See</u> Deposition of Troy Wetzel ("Wetzel Depo.") at p. 9 ln. 10-21 (KINGFISH); p. 10 ln. 8-19 (KINGFISH II); p. 12 ln. 25, p. 13 ln. 1-16 (K3) (attached as Exhibit A to Memorandum in Support).

2.     Approximately fifteen years ago, Mr. Wetzel formed a single member limited liability company named Extreme Fishing, L.L.C ("Extreme Fishing").  <u>See</u> Wetzel Depo. at p. 8 ln. 11-13, 19-23 (attached as Exhibit A to Memorandum in Support).

3.     Mr. Wetzel is the only member of Extreme Fishing.  <u>See</u> Wetzel Depo. at p. 8 ln. 18-20 (attached as Exhibit A to Memorandum in Support).

4.      The sole business of Extreme Fishing is to conduct charter fishing trips out of Venice, Louisiana.  <u>See</u> Wetzel Depo. at p. 9 ln. 5-9 (attached as Exhibit A to Memorandum in Support).

5.      In furtherance of its purpose, Extreme Fishing does business under the trade name of Louisiana Offshore Fishing Charters. <u>See</u> Wetzel Depo. at p. 7 ln. 14-25; p. 8 ln. 1-12; p. 58 ln. 16-19 (attached as Exhibit A to Memorandum in Support).

6.      In order for Extreme Fishing to conduct its charter fishing trips, Extreme Fishing charters Mr. Wetzel's three boats on a bareboat or demise charter basis.  <u>See</u> Wetzel Depo. at p. 9 ln. 10-21; p. 10 ln. 8-19; p. 13 ln. 5-10 (attached as Exhibit A to Memorandum in Support).

7.      Extreme Fishing has no employees, but rather uses six or seven individual captains as independent contractors to operate the boats that it charters from Mr. Wetzel.  <u>See</u> Wetzel Depo. at p. 11 ln. 3-24 (attached as Exhibit A to Memorandum in Support).

8.      These independent-contractor captains generally move from boat to boat working for many different charter fishing companies in Venice, as demand requires, and they do not work exclusively for any one company. <u>See</u> Wetzel Depo. at p. 15 ln. 16-25; p. 16 ln. 1-25; p. 17 ln. 1-2 (attached as Exhibit A to Memorandum in Support); Deposition of Andre Boudreau ("Boudreau Depo.") at p. 253 ln. 14-25; p. 254 ln. 1-10 (attached as Exhibit C to Memorandum in Support).

9.   Defendant, Andre Boudreau, was one of the independent-contractor captains that Extreme Fishing used to operate the chartered boats.  <u>See</u> Wetzel Depo. at p. 11 ln. 15-24 (attached as Exhibit A to Memorandum in Support).

10.   When Andre Boudreau was an independent-contractor captain aboard one of Extreme Fishing's chartered boats, he would be working for Extreme Fishing, and would be paid by Extreme Fishing.  <u>See</u> Wetzel Depo. at p. 66 ln. 21-25; p. 67 ln. 1-11 (attached as Exhibit A to Memorandum in Support).

11.   Andre Boudreau did not draw a regular salary from Extreme Fishing, <u>see</u> Wetzel Depo. at p. 18 ln. 3-16 (attached as Exhibit A to Memorandum in Support); instead, Boudreau would receive the normal Captain's fee in Venice of $500 a day when he was a captain on a vessel chartered by Extreme Fishing, <u>see</u> Wetzel Depo. at p. 19 ln. 2-6 (attached as Exhibit A to Memorandum in Support).

12.   Andre Boudreau received a Form 1099 because he was not an employee. <u>See</u> Boudreau Depo. at p. 63 ln. 2-10 (attached as Exhibit C to Memorandum in Support).

13.   Troy Wetzel is also a licensed boat captain, and he likewise served as a captain of Extreme Fishing's chartered vessels on some fishing trips.  <u>See</u> Wetzel Depo. at p. 64 ln. 10-14 (attached as Exhibit A to Memorandum in Support).

14.     Normally, when a charter fishing trip is booked with Extreme Fishing, Troy Wetzel receives a telephone call from a customer, and he tells the customer what boat they will be on and the customer sends in a deposit. <u>See</u> Wetzel Depo. at p. 43 ln. 19-22 (attached as Exhibit A to Memorandum in Support).

15.     In early February of 2017, Plaintiff Patrick Beck telephoned Troy Wetzel on short notice to schedule a charter fishing trip for February 12, 2017, and there was no time to obtain a deposit from Mr. Beck.  <u>See</u> Wetzel Depo. at p. 43 ln. 24-25; p. 44 ln. 1-3; p.  64 ln. 3-5; p. 65 ln. 5-11 (attached as Exhibit A to Memorandum in Support).

16.     Mr. Wetzel informed Mr. Beck that he had a boat available for a charter fishing trip, and that Mr. Beck's fishing trip would be on the vessel KINGFISH.  <u>See</u> Wetzel Depo. at p. 66 ln. 3-5 (attached as Exhibit A to Memorandum in Support).

17.     Because Mr. Wetzel was caring for his parents at the time of Mr. Beck's trip, Andre Boudreau was going to be the captain for Mr. Beck's charter fishing trip and not Mr. Wetzel.  <u>See</u> Wetzel Depo. at p. 64 ln. 15-21 (attached as Exhibit A to Memorandum in Support).

18.     On February 11, 2017—the day before Mr. Beck's fishing trip—the KINGFISH suffered an engine casualty and was no longer available to be used for Mr. Beck's trip.  <u>See</u> Boudreau Depo. at p. 73 ln. 7-14 (attached as Exhibit C to Memorandum in Support); Wetzel Depo. at p. 44 ln. 4-10 (attached as Exhibit A to Memorandum in Support).

19.     Andre Boudreau, who was the Captain aboard the KINGFISH at the time of the engine casualty, informed Mr. Wetzel of the extent of the problem with the KINGFISH, and Mr. Wetzel, knowing that the KINGFISH could not be repaired in time, asked Boudreau if he knew of any other boats that could be used for Mr. Beck's fishing trip the next morning.  <u>See</u> Wetzel Depo. at p. 42 ln. 15-25 (attached as Exhibit A to Memorandum in Support).

20.     Andre Boudreau then contacted Chase St. Clair, who was the owner of the M/V SUPER STRIKE, to inquire as to whether the SUPER STRIKE would be available for Mr. Beck's fishing trip the next morning on February 12, 2017, and was told that the vessel was available.  <u>See</u> Boudreau Depo. at p. 73 ln. 15-25 (attached as Exhibit C to Memorandum in Support).

21.     Mr. St. Clair had no conversations with Troy Wetzel about the availability or use of the SUPER STRIKE.  <u>See</u> Deposition of Chase St. Clair, Sr. ("St. Clair Depo.") at p. 48 ln. 11-23 (attached as Exhibit D to Memorandum in Support); Wetzel Depo. at p. 44 ln. 11-13 (attached as Exhibit A to Memorandum in Support).

22.     After Andre Boudreau informed Mr. Wetzel that a boat was available, Mr. Wetzel contacted Mr. Beck to tell him that the boat they were supposed to use for his fishing trip the next day was no longer available, but that Mr. Wetzel could give the fishing trip to another company, and they would take Mr. Beck's group fishing.  <u>See</u> Wetzel Depo. at p. 41 ln. 19-25; p. 42 ln. 1-

11; p. 43 ln. 1-18; p. 44 ln. 4-10 (attached as Exhibit A to Memorandum in Support); Boudreau Depo. at p. 68 ln. 24-25; p. 69 ln. 1-22; p. 73 ln. 7-14 (attached as Exhibit C to Memorandum in Support).

23. Mr. Beck agreed to the use of a different boat for his fishing trip, and Mr. Wetzel informed Andre Boudreau.  See Wetzel Depo. at p. 43 ln. 13-18; p. 44 ln. 4-10 (attached as Exhibit A to Memorandum in Support).

24. Boudreau had a key to Chase St. Clair's shed where the M/V SUPER STRIKE was stored, and he went and picked up the vessel and then brought the vessel to Venice.  See Boudreau Depo. at p. 73 ln. 22-25; p. 201 ln. 10-25; p. 202 ln. 1 (attached as Exhibit C to Memorandum in Support).

25. On February 12, 2017, the M/V SUPER STRIKE, with Troy Wetzel still in New Orleans, got underway from Venice, Louisiana, at approximately 6:40 a.m. with Captain Boudreau, Mr. Beck, and the other plaintiffs aboard, with visibility reduced to 50-75 yards due to fog.  See Boudreau Depo. at p. 66 ln. 4-23; p. 84 ln. 1-14; p. 90 ln. 1-22 (attached as Exhibit C to Memorandum in Support).

26. Captain Boudreau had no conversations with Mr. Wetzel or Mr. St. Clair regarding the reduced visibility prior to getting underway, and the decision to actually get underway was solely that of Captain Boudreau.  See Boudreau Depo. at p. 93 ln. 16-21; p. 94 ln. 5-7 (attached as Exhibit C to Memorandum in Support); Wetzel Depo. at p. 50 ln. 2-15 (attached as Exhibit A to Memorandum in Support).

27.   Captain Boudreau testified that once the M/V SUPER STRIKE backed away from the dock, the responsibility for the safety of the vessel and for providing the customers with a safe trip rested solely with him.   <u>See</u> Boudreau Depo. at p. 285 ln. 11-25; p. 286 ln. 1-2 (attached as Exhibit C to Memorandum in Support).

28.   A short time after the SUPER STRIKE reached the Mississippi River, the M/V IDA collided with the SUPER STRIKE.   <u>See</u> Complaint for Damages at ¶16 (Rec. Doc. 1 in consolidated action No. 17-02446).

29.   Extreme Fishing was not the owner of the M/V SUPER STRIKE that was being operated by Andre Boudreau.   <u>See</u> Order and Reasons at p. 11 (Rec. Doc. 87 in No. 17-01545).

30.   Andre Boudreau has been licensed by the U.S. Coast Guard since 2014 as an Operator of Uninspected Passenger Vessel (OUPV 6-Pack) of less than 100 gross tons and limited to six or less passengers for hire.   <u>See</u> Boudreau Depo. at p. 14 ln. 24-25, p. 15 ln. 1-16, p. 245 ln. 11-25, p. 246 ln.1 & Exhibit No. 27 (at Answer to Interrogatory No. 13) attached thereto (attached as Exhibit C to Memorandum in Support).

31.   Prior to the collision at issue in this case, Andre Boudreau had never been involved in a reportable incident to the U.S. Coast Guard.   <u>See</u> Boudreau Depo. at p. 251 ln. 4-9 (attached as Exhibit C to Memorandum in Support).

32.   Boudreau has also never had his license revoked or suspended by the Coast Guard.   <u>See</u> Boudreau Depo. at p. 20 ln. 5-7 (attached as Exhibit C to Memorandum in Support).

33.  Prior to starting commercial fishing and obtaining his Coast Guard license, Andre Boudreau had over five years of experience privately fishing offshore using the same type of boat, the same type of equipment, and traveling the same area.  See Boudreau Depo. at p. 243 ln. 15-25, p. 244 ln. 1-19 (attached as Exhibit C to Memorandum in Support).

34.  Between 2009 and 2014 when Boudreau received his Coast Guard license, Boudreau had navigated the Mississippi River approximately 65 to 100 times per year.  See Boudreau Depo. at p. 243 ln. 10-25, p. 244 ln. 1-19 (attached as Exhibit C to Memorandum in Support).

35.  Boudreau has attended and successfully passed various schools and courses, including The Captain School, see Boudreau Depo. at p. 15 ln. 17-25, p. 16 ln. 1 & Exhibit 24 attached thereto (attached as Exhibit C to Memorandum in Support), and the Boater Safety Course in 2013 prior to getting his license, see Boudreau Depo. at p. 246 ln. 3-25, p. 247 ln. 1-20 & Exhibit 42 attached thereto (attached as Exhibit C to Memorandum in Support).

36.  Prior to the collision at issue, Andre Boudreau had operated the M/V SUPER STRIKE approximately nine times while running charter fishing trips for a company called Intensity Outfitters that was owned by Josh Bodenheimer.  See Boudreau Depo. at p. 45 ln. 24-25, p. 46 ln. 1-25, p. 47 ln. 1-25, p. 48 ln. 1-25, p. 49 ln. 1-25, p. 50 ln. 1-25, p. 51 ln. 1-25, p. 52 ln. 1, p. 268 ln. 8-25, p. 269 ln. 1-25, p. 270 ln. 1-24 & Exhibit 28 attached thereto (attached as Exhibit C to Memorandum in Support).

37. Once Mr. Wetzel's vessel, the M/V KING FISH, was not available to be used for Mr. Beck's fishing trip due to an engine casualty, the fishing trip was given away to Mr. Boudreau.  See Wetzel Depo. at p. 76 ln. 15-23 (attached as Exhibit A to Memorandum in Support).

38. Once Mr. Beck's trip was given away to Mr. Boudreau, it was up to both Mr. Boudreau and the owner of the vessel that was going to be used for the fishing trip to determine the cost that Mr. Beck would be charged for the trip.  See Wetzel Depo. at p. 75 ln. 12-25, p. 76 ln. 1-7 (attached as Exhibit A to Memorandum in Support).

39. On the day of the incident, Mr. Wetzel did not control when Andre Boudreau was supposed to leave the dock, the route to take to the fishing ground, the speed to use, the location to fish, or how long to fish.  See Boudreau Depo. at p. 251 ln. 20-25, p. 252 ln. 1-5 (attached as Exhibit C to Memorandum in Support).

40. On the day of the incident, the decision to leave the dock that morning rested solely with Andre Boudreau, and Boudreau was solely responsible for the safety of everybody aboard the M/V SUPER STRIKE.  See Boudreau Depo. at p. 285 ln. 11-25, p. 286 ln. 1-2 (attached as Exhibit C to Memorandum in Support).

41. Andre Boudreau provided the "rods, reels, fishing nets and other fishing equipment" on the M/V SUPER STRIKE on the day of the incident, and Chase St. Clair provided the vessel to be used that day.  See Boudreau

Depo. at Exhibit 28 attached thereto (Answers to Interrogatory Nos. 6 & 7) (attached as Exhibit C to Memorandum in Support).

42.   Mr. Boudreau has a full-time job working for his father, and he only fishes on the weekends if he receives enough advance notice.  See Boudreau Depo. at p. 40 ln. 13-25, p. 41 ln. 1-25, p. 42 ln. 1-25, p. 43 ln. 1-20, p. 252 ln. 24-25, p. 253 ln. 1-7 (attached as Exhibit C to Memorandum in Support).

Respectfully submitted,

**DAIGLE, FISSE & KESSENICH, PLC**

/s/ Kirk N. Aurandt
**MICHAEL W. McMAHON (#23987)**
**KIRK N. AURANDT (#25336)**
P.O. Box 5350
Covington, LA  70434-5350
Telephone: (985) 871-0800
Facsimile: (985) 871-0899
***Attorneys for Defendant, Extreme Fishing, L.L.C.***

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this 22nd day of May, 2018.

/s/ Kirk N. Aurandt
KIRK N. AURANDT