## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  IN THE MATTER OF THE COMPLAINT OF TK BOAT RENTALS, LLC, AS OWNER AND OPERATOR OF THE M/V MISS IDA PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO.  2:17-cv-01545<br>c/w 17-02446 and c/w 17-03657<br><br>SECTION "R" MAG. DIV. (4)<br><br>JUDGE VANCE<br><br>MAGISTRATE ROBY |
| *Pertains to All Actions* | |

### REPLY MEMORANDUM OF DEFENDANT, EXTREME FISHING, L.L.C., IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

### Introduction

The Motion for Summary Judgment (Rec. Doc. 107) filed by Defendant, Extreme Fishing, L.L.C. ("Extreme Fishing"), in advance of the original August 6, 2018 trial date, sought to dismiss the only two remaining claims against it for vicarious liability filed by Claimants/Plaintiffs and TK Boat Rentals, LLC ("TK Boats"), and for negligent entrustment brought by TK Boats.  In response to the Motion for Summary Judgment (Rec. Doc. 107), Claimants/Plaintiffs[1] filed a statement of no opposition (Rec. Doc. 110) wherein they state that "[a]fter conducting extensive discovery, including numerous depositions, and upon review of the evidence and testimony, Claimants/Plaintiffs … do not oppose the Motion for Summary Judgment filed on behalf of [Extreme Fishing]." As

---

[1] The remaining Claimants/Plaintiffs are Patrick A. Beck, individually and as the father and administrator of the estate of his minor son, C.D.B., Justin McCarthy, and Michael Harrell, who filed a Complaint for Damages in consolidated action No. 17-02446.

suggested by Claimants/Plaintiffs, discovery on liability issues was completed in anticipation of the Pre-Trial Conference originally set for June 28, 2018.

Limitation Plaintiffs, Chase St. Clair and Andre Boudreau and GEICO Marine Insurance Company ("GEICO"), who have not pled a single cause of action against Extreme Fishing in these consolidated proceedings, filed a Memorandum in Opposition (Rec. Doc. 112) wherein they argue alternative legal theories, again never pled since inception of litigation in February 2017 until now, and suggest that their opposition should be treated as a Cross-Motion for Summary Judgment in their favor.[2] Finally, Limitation Plaintiff, TK Boats, in the main action No. 17-01545, filed a Memorandum in Opposition (Rec. Doc. 113). In the interests of judicial economy, Extreme Fishing will reply to both opposition memoranda (Rec. Docs. 112 and 113) in this single pleading.

As explained herein, Extreme Fishing's Motion for Summary Judgment (Rec. Doc. 107) should respectfully be granted because Claimants/Plaintiffs did not oppose it and TK Boats (Rec. Doc. 113), and St. Clair, Boudreau, and GEICO (Rec. Doc. 112) have failed to produce any contrary evidence showing that summary judgment is not properly granted in Extreme Fishing's favor on the two remaining claims against it. In the event the Court entertains Limitation Plaintiffs' alternative, unpled legal defenses, Extreme Fishing submits the following response.

---

[2] It is unclear how Mr. St. Clair, Mr. Boudreau, and GEICO even have standing to oppose Extreme Fishing's Motion for Summary Judgment that seeks to dismiss the remaining claims of Claimants/Plaintiffs and TK Boat Rentals against Extreme Fishing, when St. Clair, Boudreau, and GEICO have asserted no causes of action against Extreme Fishing in these consolidated actions.

I. **Reply to the Memorandum in Opposition of Limitation Plaintiffs, Chase St. Clair and Andre Boudreau, and GEICO Marine Insurance Company (Rec. Doc. 112)**

A. **Mr. St. Clair, as the owner of the M/V SUPER STRIKE, bears the "heavy burden" of proving that the M/V SUPER STRIKE was operating under a demise or bareboat charter at the time of the collision.**

Under general maritime law, it is well settled that a vessel owner, here Chase St. Clair as the owner of the M/V SUPER STRIKE, bears the heavy burden of proving the facts that give rise to the existence of a valid bareboat or demise charter party for his vessel at the time of the collision.  See Deal v. A.P. Bell Fish Co., 674 F.2d 438, 440–41 (5th Cir. 1982) (stating that "[i]n Guzman [v. Pichirilo, 369 U.S. 698, 700 (1982)], the Court placed the burden of proving a bareboat charter solidly on the owner of the vessel.").  According to the U.S. Supreme Court, "[t]he burden [of proving the existence of a demise or bareboat charter] is heavy, for courts are reluctant to find a demise when the dealings between the parties are consistent with any lesser relationship."  Guzman, 369 U.S. at 700.

The U.S. Fifth Circuit has recognized that a demise or bareboat charter party "is not a documentary choice for the conduct of the business of shipping; it is rather an instrument for vesting in one person most of the incidents of ownership in a capital asset of that business—the ship—while another retains the general ownership and the right of reversion."  In re Admiral Towing and Barge Co., 767 F.2d 243, 248 (5th Cir. 1985) (quotation marks and citation omitted).  In other words, a demise or bareboat charter party is "tantamount to, though, just short of, an outright transfer of ownership."  Guzman v. Pichirilo, 369 U.S. 698, 700, 82 S.Ct. 1095, 1096, 8 L.Ed.2d 205 (1962).

Importantly, "anything short of such a complete transfer is a time or voyage charter party or not a charter party at all." Guzman, 369 U.S. at 700, 82 S.Ct. at 1096. Finally, for a demise or bareboat charter party to exist, "the owner of the vessel must completely and exclusively relinquish possession, command, and navigation thereof to the demisee." Guzman, 369 U.S. at 699, 82 S.Ct. at 1096. In this respect, "[t]he test is one of 'control.'" Gilmore and Black, The Law of Admiralty §4–21 (2d ed. 1975).

Mr. St. Clair cannot meet his "heavy burden" of establishing the existence of a bareboat or demise charter party between himself and Extreme Fishing because St. Clair never completely relinquished possession, command or control of the M/V SUPER STRIKE. First, there were absolutely no conversations, texts or written agreements between Mr. St. Clair and Mr. Wetzel—who is the sole member of Extreme Fishing, L.L.C.—regarding the use of the M/V SUPER STRIKE prior to the incident in question much less any discussions regarding payment or term of use of the vessel. See Wetzel Depo. at p. 44 ln. 11-13 (Rec. Doc. 107-2); St. Clair Depo. at p. 48 ln. 11-23 (Rec. Doc. 107-5). While Boudreau did communicate with St. Clair prior to the incident about use of the vessel, St. Clair testified Boudreau never used the M/V SUPER STRIKE without telling St. Clair first considering St. Clair stored the vessel in a shed under lock and key. See St. Clair Depo. at p. 80 (attached as Exhibit D).

Further, and as explained more fully in Section I(B) below, Mr. St. Clair's actions prior to and post-collision have been entirely inconsistent with the existence of a bareboat or demise charter party between St. Clair and Extreme Fishing for the use of the M/V SUPER STRIKE. For example, when Andre Boudreau fueled up the M/V

SUPER STRIKE for the trip in question, Mr. St. Clair paid for the fuel through the use of his father's credit account. See St. Clair Depo. at p. 53 ln. 14-20, p. 54 ln. 7-12 (attached as Exhibit D).  Then, shortly after the commencement of the charter fishing trip in question, when the M/V SUPER STRIKE experienced an engine issue, Andre Boudreau called Mr. St. Clair to report the problem to him, not Mr. Wetzel. See Boudreau Depo. at p. 111 ln. 20-25, p. 112 ln. 1-16 (attached as Exhibit C).  Third, following the collision, Mr. St. Clair went to the scene to salvage the M/V SUPER STRIKE, not Troy Wetzel. See St. Clair Depo. at p. 84 ln. 10-25, p. 85 ln. 1-11 (attached as Exhibit D).  Fourth, Andre Boudreau testified that prior to the collision at issue he had operated the M/V SUPER STRIKE approximately nine times while running charter fishing trips for a company called Intensity Outfitters that was owned by Josh Bodenheimer. See Boudreau Depo. at p. 45 ln. 24-25, p. 46 ln. 1-25, p. 47 ln. 1-25, p. 48 ln. 1-25, p. 49 ln. 1-25, p. 50 ln. 1-25, p. 51 ln. 1-25, p. 52 ln. 1, p. 268 ln. 8-25, p. 269 ln. 1-25, p. 270 ln. 1-24 & Exhibit 28 attached thereto (Rec. Doc. 107-4). In this respect, because Andre Boudreau had used the M/V SUPER STRIKE multiple times unrelated to his work for Extreme Fishing and prior to the collision, Mr. St. Clair had previously sent in Mr. Boudreau's qualifications to GEICO and had him added to the GEICO policy covering the M/V SUPER STRIKE. See St. Clair Depo. at p. 38 ln. 20-25, p. 39 ln. 1-25, p. 40 ln. 1-25, p. 41 ln. 1-13 (attached as Exhibit D).  Further, on February 15, 2018, Chase St. Clair, Andre Boudreau, and GEICO Marine Insurance Company filed a Cross-Claim against AGCS Marine Insurance Company, who is the insurer of Mr. Wetzel's vessels, for defense costs, indemnity and/or contribution for any

amounts that Mr. Boudreau may be found liable to pay to any party as a result of the collision in question, and claiming that Andre Boudreau is an insured under the AGCS policy. See Chase St. Clair, Andre D. Boudreau and GEICO Marine Insurance Company's Cross-Claim Against AGCS Marine Insurance Company (Rec. Doc. 79 at p. 6 ¶¶31-32).  The Cross-Claim, however, makes no claims against Extreme Fishing or Mr. Wetzel as a demise or bareboat charterer.

Given the foregoing, and under the particular circumstances of this case, it is respectfully submitted that Mr. St. Clair maintained the requisite possession, command, and control of the M/V SUPER STRIKE at the time of the collision and St. Clair, Boudreau and GEICO cannot carry their burden necessary for arguing that Extreme Fishing was the demise or bareboat charterer of the M/V SUPER STRIKE.  Accordingly, their incorporated cross-motion for summary judgment on this issue should respectfully be denied.

**B.   By including Andre Boudreau as a party plaintiff in the Limitation Action, Chase St. Clair and Andre Boudreau have, admitted that if the M/V SUPER STRIKE was operating under a demise or bareboat charter party at the time of the collision, then Andre Boudreau was the vessel's demise or bareboat charterer, and they should be estopped from now arguing otherwise.**

The positions taken by Limitation Plaintiffs, Chase St. Clair and Andre Boudreau, that "Extreme Fishing Bareboat Chartered M/V SUPER STRIKE and is therefore Liable for the Negligence of its Crew," see Opp. Mem. at p. 9 (Rec. Doc. 112) (capitalized words in original), and that "Extreme Fishing is attempting to foist its liability as bareboat charterer onto Boudreau," see Opp. Mem. at p. 9 (Rec. Doc. 112) are legally inconsistent with every pleading they have filed in these consolidated actions, and, in

particular, are wholly inconsistent with the Limitation Action (Rec. Doc. 1 in Consolidated Action No. 17-03657) filed by Chase St. Clair and Andre Boudreau.

First, the Limitation of Vessel Owner's Liability Act (the "Act") states that "the liability of the <u>owner</u> of a vessel for any claim, debt, or liability … shall not exceed the value of the vessel and pending freight."  46 U.S.C. §30505(a) (emphasis added). Under the Act, "the term 'owner' includes a charterer that mans, supplies, and navigates a vessel at the charterer's own expense or by the charterer's own procurement."  46 U.S.C. §30501.  This statutory wording has long been interpreted as referring to a demise or bareboat charterer of a vessel.  <u>See</u> <u>The ATLAS NO. 7</u>, 42 F.2d 480, 481 (S.D.N.Y. 1930).  Thus, it is well settled that the parties entitled to file a Limitation Action under the Act are the owner of a vessel and the bareboat or demise charterer of a vessel.  <u>See</u> Thomas J. Schoenbaum, 2 <u>Admiralty & Mar. Law</u> §15–2 (5th ed. 2017) ("The term owner is defined to include the charterer who actually mans, supplies, and navigates the vessel, which is interpreted to mean demise and bareboat charterers, but not a time or voyage charterer.  The term 'owner' does not include the employer of the ship's crew or a management company responsible for the operation of the vessel.") (quotation marks and footnotes omitted).  Moreover, by statute, the master of a vessel is not entitled to limited liability under the Act.  <u>See</u> 46 U.S.C. §30512; <u>Zapata Haynie Corp. v. Arthur</u>, 926 F.2d 484, 485 (5th Cir. 1991).

Here, Chase St. Clair and Andre Boudreau jointly filed a verified Limitation Action (Rec. Doc. 1 in consolidated action No. 17-03657) seeking exoneration from or limitation of liability arising out of the collision between the M/V SUPER STRIKE and the

M/V IDA.  Their Limitation Action alleges that Chase St. Clair was the owner of the M/V SUPER STRIKE and that Andre Boudreau was the operator of the M/V SUPER STRIKE.  See Complaint for Exoneration From or Limitation of Liability at p. 1 ¶¶1–2 (Rec. Doc. 1 in Consolidated Action No. 17-03657).

It is undisputed that Chase St. Clair was the owner of the M/V SUPER STRIKE and thus has a statutory right to seek limited liability under the Act if he can satisfy the requirements for lack of privity or knowledge.  See 46 U.S.C. §§30501, 30505, 30511.  Andre Boudreau, however, was not the owner of the M/V SUPER STRIKE, and, as stated above, the master of a vessel has no right to limit his liability.  See 46 U.S.C. §30512.  Therefore, the only way Andre Boudreau would have a right to seek limited liability under the Act would be if he was the demise or bareboat charterer of the M/V SUPER STRIKE.  The fact that Mr. Boudreau is labeled the "operator" of the M/V SUPER STRIKE is of no moment.  Cf. In re Otal Investments Ltd., No. 03-4304, 2013 WL 6645438, at *3, 2014 A.M.C. 258, 262 (S.D.N.Y. Dec. 17, 2013) (refusing to reconsider prior decision that "[m]anagers may not limit their liability under the Limitation of Liability Act because they are not owners or bareboat charterers."). Consequently, the inclusion of Andre Boudreau as a party plaintiff in the Limitation Action (Rec. Doc. 1 in Consolidated Action No. 17-03657) is tantamount to an admission on the part of both Chase St. Clair and Andre Boudreau that, to the extent that the M/V SUPER STRIKE was operating under a demise or bareboat charter at the time of the collision, the demise or bareboat charterer of the M/V SUPER STRIKE was Andre Boudreau.  In other words, the position now attempted to be asserted by St. Clair, Boudreau, and

GEICO that Extreme Fishing or Mr. Wetzel was the demise or bareboat charterer of the M/V SUPER STRIKE is unsupported considering the inclusion of Mr. Boudreau as a party plaintiff in their verified Limitation Action (Rec. Doc. 1 in Consolidated Action No. 17-03657). As such, Mr. St. Clair, Mr. Boudreau, and GEICO should be estopped from now arguing a contrary position. A verified complaint is an equivalent to an affidavit and can be considered summary judgment evidence. See King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994). In an attempt to avoid any alleged negligence attributable to Boudreau, St. Clair, Boudreau and GEICO belatedly argue legal theories contradictory to previously filed sworn pleadings. The inconsistency is self-evident particularly considering Extreme Fishing has not ever pled bareboat charterer status or Limitation of Liability as a defense.

Further to the point, there are no allegations contained in the St. Clair/Boudreau Limitation Action whatsoever that Extreme Fishing was the bareboat or demise charterer of the M/V SUPER STRIKE, or that Extreme Fishing exercised exclusive possession, command, navigation, and control over the M/V SUPER STRIKE, or that Andre Boudreau was otherwise operating the M/V SUPER STRIKE on Extreme Fishing's behalf, or that Andre Boudreau was employed by Extreme Fishing. According to the U.S. Fifth Circuit, "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." Cutera v. Board of Supervisors of Louisiana State University, 429 F.3d 108, 113 (5th Cir. 2005). Accordingly, the Court should respectfully reject this attempt by Mr. St. Clair, Mr. Boudreau, and GEICO to allege, for the first time in response to a summary-

judgment motion that is not even directed towards them, a claim not alleged or otherwise discussed in their verified Limitation Action or other pleadings in this action.

Similarly, the prior filings of St. Clair, Boudreau, and GEICO in these consolidated actions are also wholly devoid of any allegations that either Extreme Fishing or Troy Wetzel was the demise or bareboat charterer of the M/V SUPER STRIKE at the time of the collision. Nor have St. Clair, Boudreau, and GEICO asserted any cross-claims against Extreme Fishing seeking contribution or indemnity. In fact, even their responses to the allegations of the Claimants/Plaintiffs are entirely inconsistent with their newly-found position that Mr. Boudreau was somehow working for Mr. Wetzel or Extreme Fishing at the time of the collision, or that the M/V SUPER STRIKE was bareboat or demise chartered to Extreme Fishing or Mr. Wetzel at the time of the collision. For example, the below table shows, side-by-side, the response of Chase St. Clair and Andre Boudreau to the following allegations contained in the original Complaint for Damages filed by Claimants/Plaintiffs (Rec. Doc. 1 in Consolidated Action No. 17-02446), wherein St. Clair, Boudreau, and GEICO specifically deny that Mr. Wetzel or someone on his behalf entered into an agreement to use one of Mr. St. Clair's vessels, and further deny that Andre Boudreau was acting in the course and scope of his employment with Extreme Fishing or Mr. Wetzel when operating Mr. St. Clair's boat:

| Claimants/Plaintiffs'<br>Complaint for Damages (Rec. Doc. No. 1 in Consolidated Action No. 17-02446) | Answer to Complaint for Damages and Cross-Claim on Behalf of Defendants, Chase B. St. Clair, Andre D. Boudreau and GEICO Marine Insurance Company (Rec. Doc. No. 9 in No. 17-01545) |
|---|---|
| * * * | * * * |
| 14. | 14. |
| On the morning of February 12, 2017, Plaintiffs were supposed to be taken to fish offshore in the Gulf of Mexico on a fishing vessel owned and operated by Mr. Wetzel, d/b/a Louisiana Offshore Charters, and/or by Extreme Fishing. However, this fishing vessel was inoperable. **Accordingly, upon information and belief, Mr. Wetzel or someone on his behalf entered into an agreement with Defendant, Chase B. St. Clair, or his representative to use one of Mr. St. Clair's fishing vessels to take Plaintiffs to fish offshore that day, and Mr. St. Clair was to be paid for the use of his fishing vessel for this purpose**. | Defendants deny the truth of the allegations contained in Paragraph 14 of the Complaint for Damages. |
| 15. | 15. |
| Due to the aforesaid events, in the morning hours on February 12, 2017, Plaintiffs were passengers on a 32-foot catamaran offshore fishing vessel owned by Mr. St. Clair **and being operated by Defendant, Andre D. Boudreau, in the course and scope of his employment with Mr. Wetzel, d/b/a Louisiana Offshore Fishing Charters, and/or Extreme Fishing**. | Defendants deny the truth of the allegations contained in Paragraph 15 of the Complaint for Damages. |

Additionally, if the M/V SUPER STRIKE was demise or bareboat chartered to Extreme Fishing or Mr. Wetzel as St. Clair, Boudreau, and GEICO now attempt to argue, which is denied, then one would have expected Mr. St. Clair to have raised an affirmative defense to the claims of Plaintiffs/Claimants that he, as the owner of the M/V SUPER STRIKE, is not liable in personam as a matter of law for the negligence of the M/V SUPER STRIKE's demise or bareboat charterer. This affirmative defense, however, is nowhere to be found in the Answer of St. Clair, Boudreau, and GEICO to

the Complaint for Damages filed by Plaintiffs/Claimant. Moreover, although their Answer included a Cross-Claim, the Cross-Claim did not name Extreme Fishing or Mr. Wetzel as a cross-claim defendant, or otherwise include any allegations against Extreme Fishing or Mr. Wetzel.

Similarly, St. Clair, Boudreau, and GEICO in their response to the Cross-Claim of TK Boat Rentals, LLC deny that Mr. Wetzel or Extreme Fishing was the employer of Andre Boudreau at the time of the collision, and further deny that Mr. Wetzel or Extreme Fishing is even responsible for the collision and resulting damages:

| **TK Boat Rentals, LLC's Answer to Claim, Complaint, Cross-Claim and 14(c) Tender (Rec. Doc. No. 18 in No. 17-01545)** <br><br> * * * <br><br> **Cross-Claim and Rule 14(c) Tender** <br><br> * * * | **Chase St. Clair, Andre Boudreau, and GEICO Marine Insurance Company's Answer to Cross-Claim and 14(c) Tender (Rec. Doc. No. 21 in No 17-01545)** <br><br> * * * |
|---|---|
| 10. | 10. |
| The M/V SUPER STRIKE was owned by defendant Chase St. Clair. Mr. St. Clair entrusted the vessel to Troy Wetzel, for profit, for the purpose of taking the passengers into the Gulf of Mexico to fish. | Chase St. Clair admits that he is and was the owner of the M/V SUPER STRIKE. The truth of the remaining allegations is denied. |
| 11. | 11. |
| The use of the M/V SUPER STRIKE was necessitated because the vessel that was to be used by Captain Andre Boudreau, and which vessel was owned by Troy Wetzel and/or Extreme Fishing, LLC, was inoperable. | Cross-Claim Defendants admit the truth of the allegations contained in Paragraph 11 of the Cross-Claim and Rule 14(c) Tender. |
| 12. | 12. |
| **Troy Wetzel and/or Extreme Fishing, LLC was the employer of Andre Boudreau on February 12, 2017.** | Cross-Claim Defendants deny the truth of the allegations contained in Paragraph 12 of the Cross-Claim and Rule 14(c) Tender. |
| * * * | * * * |

| | |
|---|---|
| 21.  **Troy Wetzel d/b/a Louisiana Offshore Fishing Charters and/or Extreme Fishing, LLC, as the employer of Andre Boudreau, are responsible for the collision and resulting damages.** | 21.  Cross-Claim Defendants deny the truth of the allegations contained in Paragraph 21 of the Cross-Claim and Rule 14(c) Tender. |
| 22.  Troy Wetzel d/b/a Louisiana Offshore Fishing Charters and/or Extreme Fishing, LLC are further responsible for the collision and resulting damages because Troy Wetzel d/b/a Louisiana Offshore Fishing Charters and/or Extreme Fishing, LLC negligently entrusted the M/V SUPER STRIKE and the passengers to Andre Boudreau, without determining whether Andre Boudreau was competent for the work requested of him or whether he was competent to run the M/V SUPER STRIKE in the fog. | 22.  Cross-Claim Defendants deny the truth of the allegations contained in Paragraph 22 of the Cross-Claim and Rule 14(c) Tender. |

Again, these responses are entirely inconsistent with the current argument of Mr. St. Clair, Mr. Boudreau, and GEICO that the M/V SUPER STRIKE was bareboat or demise chartered to Extreme Fishing or Mr. Wetzel at the time of the collision, or that Mr. Boudreau was employed by Extreme Fishing or Mr. Wetzel.

Under all of the above circumstances, this Court is entirely justified in discrediting the attempt of Mr. St. Clair, Mr. Boudreau, and GEICO to now argue that the M/V SUPER STRIKE was bareboat or demise chartered to Mr. Wetzel or Extreme Fishing at the time of the collision, or that Mr. Boudreau was employed by Extreme Fishing or Mr. Wetzel.  Cf. John W. Griffin, The American Law of Collision §249 (1949) ("[I]n general it is a ground for suspicion at least if the log omits mention of the principal fault claimed against the other vessel.") (citing to The RICHMOND, 114 F. 208, 212 (4th Cir. 1902).

For all of the above reasons Mr. St. Clair, Mr. Boudreau, and GEICO have not shown that they are entitled to the granting of a cross-motion for summary judgment in their favor, and their incorporated cross-motion for summary judgment should respectfully be denied.

## II. Reply to the Memorandum in Opposition of TK Boat Rentals, LLC (Rec. Doc. 113)

### A. TK Boats has articulated no valid basis why this Court should reconsider its prior ruling denying TK Boats' Motion for Partial Summary Judgment on the Employment Status of Andre Boudreau.

In response to the Motion for Summary Judgment filed by Extreme Fishing (Rec. Doc. No. 107), TK Boat Rentals, LLC ("TK Boats") first attempts to rehash its prior Motion for Partial Summary Judgment Regarding Independent Contractor Defense (Rec. Doc. No. 71), which this Court has already denied, see Order and Reasons at p. 11 (Rec. Doc. No. 87). Specifically, TK Boats incorporates its prior arguments by reference, and does not attempt to introduce any new evidence or otherwise articulate any reasons why this Court's prior decision should be reexamined. See Opposition to Extreme Fishing LLC's Motion for Summary Judgment at p. 1 ("Rather than re-plead its argument, law, and facts, TK incorporates them by reference.") (Rec. Doc. No. 113). As Extreme Fishing has already responded to those arguments in its prior opposition memorandum, see Memorandum of Defendants, Troy Wetzel and Extreme Fishing, L.L.C., in Opposition to Motion for Partial Summary Judgment Regarding Independent Contractor Defense (Rec. Doc. No. 76), and given that TK Boats has failed to introduce any new evidence and is merely incorporating its prior arguments by reference, then Extreme Fishing will likewise rely on its previous opposition memorandum and

incorporate those arguments herein by reference. Consequently, TK Boats' attempt to relitigate its previously denied motion for partial summary judgment should respectfully be denied.

B. **TK Boats has produced no evidence showing that Extreme Fishing or Troy Wetzel qualified as the demise or bareboat charterer of the M/V SUPER STRIKE at the time of the collision.**

Next, TK Boats argues that "Troy Wetzel, not Andre Boudreau, chartered the M/V SUPER STRIKE." Opposition to Extreme Fishing LLC's Motion for Summary Judgment at p. 2 (Rec. Doc. No. 113). TK Boats, however, fails to discuss the type of charter party allegedly entered into, and, in any event, to the extent that TK Boats is arguing that Extreme Fishing or Troy Wetzel[3] was the demise or bareboat charterer of the M/V SUPER STRIKE, TK Boats fails to produce any evidence that the owner of the M/V SUPER STRIKE, Chase St. Clair, "completely and exclusively relinquish[ed] possession, command, and navigation [of the M/V SUPER STRIKE] thereof to [Mr. Wetzel or Extreme Fishing]." Guzman, 369 U.S. at 699, 82 S.Ct. at 1096. Nor has TK Boats produced any evidence showing that Extreme Fishing exercised the requisite "control" over the M/V SUPER STRIKE necessary for either to have been the demise or bareboat charterer of the M/V SUPER STRIKE on the day of the collision. See Discussion in Section I(A) at pp. 3–4 above.

---

[3] Of course, all claims and cross-claims against Troy Wetzel have already been dismissed with prejudice in these consolidated actions. See Order and Reasons at p. 12 (Rec. Doc. No. 87).

### C. TK Boats' argument regarding the rest requirements of 46 U.S.C. §8104, is a red herring because the statute and its accompanying regulations are not applicable to a vessel such as the M/V SUPER STRIKE.

Lastly, TK Boats argues Extreme Fishing is liable for negligent entrustment because "Troy Wetzel had a duty to ensure his charter captain, Captain Boudreau, had adequate rest." Opposition to Extreme Fishing LLC's Motion for Summary Judgment at p. 5 (Rec. Doc. No. 113).

In this respect, Andre Boudreau, as the captain aboard the M/V SUPER STRIKE and the primary person that the statute, if applicable, would be designed to protect from overwork, specifically testified during his deposition that he was not tired or fatigued on the day of the collision. See Boudreau Deposition at p. 288 ln. 10-16 (attached as Exhibit C).

While relied upon by TK Boat Rentals, there is no private right of action available under 46 U.S.C. §8104 for its violation, and a person who violates the statute is subject to a fine payable to the U.S. Government. See 46 U.S.C. §8104(i) ("A person violating subsection (a) or (b) of this section is liable to the United States Government for a civil penalty of $10,000."); see also Feemster v. BJ-Titan Services Co./Titan Services, Inc., 873 F.2d 91, 93 (5th Cir. 1989) (stating that "[t]he general purpose of this legislation is to promote maritime safety, but not with employees acting as private enforcers and as private attorneys general; the agent of enforcement is the Coast Guard."). The Coast Guard investigated this matter and no action has been levied against Boudreau or Extreme.

Further, TK Boats has not shown that the statutory provision upon which it relies, 46 U.S.C. §8104(a),[4] is even applicable to a vessel such as the M/V SUPER STRIKE, which is a small uninspected passenger vessel that carries no more than six passengers on fishing trips. For example, one of the implementing regulations states that "Title 46 U.S.C. 8104 applies to the establishment of watches aboard certain U.S. vessels. The establishment of adequate watches is the responsibility of the vessel's master." 46 C.F.R. §15.705(a). Another regulation states that "[t]he master must post watch schedules where they are easily accessible. They must cover each affected person under paragraph (a) of this section, and must take into account the rest requirements of this section as well as port rotations and changes in the vessel's itinerary." 46 C.F.R. §15.1111(f). The establishment of a "watch schedule," however, is clearly not applicable on an uninspected passenger fishing vessel such as the M/V SUPER STRIKE that leaves Venice in the morning and return the same afternoon.

Similarly, owners and operators and personnel serving on an uninspected passenger vessel as defined in 46 U.S.C. §2101(42)(B) and that are "engaged exclusively on domestic, near-coastal voyages are in compliance with subpart K of this part and are, therefore, not subject to further requirements for the purposes of the STCW [The Seafarers' Training, Certification and Watchkeeping Code] Convention." 46 C.F.R. §15.105(g)(3); see also 46 C.F.R. §15.1101(a)(2)(iii) ("The following small vessels engaged exclusively on domestic voyages are not subject to any obligation for

---

[4] It is believed that TK Boats mistakenly referred to 46 U.S.C. §8104(a) as 46 C.F.R. §8104(a) in its opposition memorandum. See Opposition to Extreme Fishing LLC's Motion for Summary Judgment at p. 6 (Rec. Doc. No. 113).

the purposes of the STCW Convention: … (iii) Uninspected passenger vessels as defined in 46 U.S.C. 2101(42)(B)."). Given the foregoing, because the implementing regulation for "Work hours and rest periods" is found in Subpart K of Part 15, <u>see</u> 46 C.F.R. §15.1111, an uninspected passenger vessel as defined in 46 U.S.C. §2101(42)(B), such as the M/V SUPER STRIKE, is exempt from the requirements of 46 U.S.C. §8104.

Nevertheless, and without waiving the foregoing, because Extreme Fishing was not the owner of the M/V SUPER STRIKE, TK Boats' argument relies on the unproven assertion that Extreme Fishing or Troy Wetzel was the demise or bareboat charterer of the M/V SUPER STRIKE and the employer of Andre Boudreau at the time of the collision. Again, absent proof that Extreme Fishing or Troy Wetzel met the stringent requirements necessary to be the demise or bareboat charterer of the M/V SUPER STRIKE, and that Extreme Fishing or Mr. Wetzel was Mr. Boudreau's employer, neither Extreme Fishing nor Troy Wetzel could possibly be liable for negligent entrustment under the rest statute cited by TK Boats.

Based on the foregoing reasons, the opposition arguments of TK Boats should respectfully be rejected.

## Conclusion

For these reasons and for those reasons set forth in its original Memorandum in Support, Extreme Fishing respectfully requests that this Court grant its Motion for Summary Judgment, and that all of the remaining claims of Claimants/Plaintiffs and TK Boat Rentals, LLC against it be dismissed, with prejudice, each party to bear its own

costs.

                Respectfully submitted,

                **DAIGLE, FISSE & KESSENICH, PLC**

                /s/ Kirk N. Aurandt
                **MICHAEL W. McMAHON (#23987)**
                **KIRK N. AURANDT (#25336)**
                P.O. Box 5350
                Covington, LA 70434-5350
                Telephone: (985) 871-0800
                Facsimile: (985) 871-0899
                ***Attorneys for Defendant, Extreme Fishing, L.L.C.***

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others by depositing same in the United States Mail, postage prepaid and properly addressed, this 5th day of June, 2018.

                /s/ Kirk N. Aurandt
                KIRK N. AURANDT