UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE | * CIVIL ACTION NO. 17-1545 c/w 17-2446 |
| COMPLAINT OF TK BOAT RENTALS, | *                       and 17-3657 |
| LLC, AS OWNER AND OPERATOR OF | * |
| THE M/V MISS IDA | * JUDGE SARAH S. VANCE |
| | * |
| | * MAGISTRATE JUDGE KAREN WELLS ROBY |
| ***This document relates to Beck, et al v. TK*** | * |
| ***Boat Rentals, LLC, et al, 17-2446*** | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**</u>
<u>**FILED ON BEHALF OF ANDRE D. BOUDREAU AND**</u>
<u>**GEICO MARINE INSURANCE COMPANY**</u>

Cross-Claimant and defendant, Allianz Global Corporate and Specialty Marine Insurance

Company ("AGCS"), respectfully submits this opposition to the Motion for Summary Judgment

("Motion") filed on behalf of Andre D. Boudreau ("Boudreau") and GEICO Marine Insurance

Company ("GMIC") (collectively, "GEICO").

### I.  <u>Timeline / Background</u>

• February 12, 2017:   Collison on the Mississippi River between the M/V MISS IDA, owned by
TK Boat Rentals, L.L.C. ("TK Boat Rentals"), and the M/V
SUPERSTRIKE, owned by Chase B. St. Clair ("St. Clair").  At the time,
Boudreau was the captain of the SUPERSTRIKE, a scheduled vessel
under GMIC Policy No. CBT 1008950-00 ("GMIC Policy").  Plaintiffs
claim to have suffered injuries during the collision ("incident").[1]

• March 24, 2017:   Complaint for Damages ("Complaint") filed on behalf of the plaintiffs,
naming TK Boat Rentals, Boudreau, St. Clair, GMIC, and "Troy Wetzel,
D/B/A Louisiana Offshore Fishing Charters, Extreme Fishing, L.L.C."
AGCS, which had Policy No. 92005573 ("AGCS Policy")[2] in place
naming Troy Wetzel ("Wetzel") as the insured and the M/V KINGFISH I
("KINGFISH") as the scheduled vessel, was not named in the Complaint.[3]
GMIC agreed to defend Boudreau without any reservations whatsoever.

---

[1] *See* Exhibit 1, GMIC Policy.
[2] *See* Exhibit 2, AGCS Policy.
[3] *See* Rec Doc 1.

• April 19, 2017:     St. Clair and Boudreau initiated this limitation action.[4]

• May 2, 2017:       AGCS receives first notice of the incident / the Complaint.  AGCS did not have an opportunity to investigate why the KINGFISH was allegedly out of service at the time of the incident before repairs had been made (whether for a covered or uncovered loss) or a timely opportunity to investigate the incident itself.[5]  (It was reported that vessel out of service was the M/V KINGFISH II, scheduled under another AGCS policy, and that the subject vessel was inoperable at the time of the incident due to engine / transmission problem.  AGCS did not learn that the actual vessel out of service was the KINGFISH until later.)

• May 10, 2017:      AGCS issued a Reservation of Rights Letter to Wetzel under the AGCS Policy.[6]

• June 14, 2017:     Undersigned counsel issued a Reservation of Rights Letter to Wetzel under the AGCS Policy.[7]

• November 27, 2017: GEICO receives a copy of the AGCS Policy.[8]  Under the Federal Rules, GEICO could have demanded this at the inception of the litigation.

• January 2, 2018:   First Supplemental and Amending Complaint for Damages filed on behalf of the plaintiffs, naming AGCS as the insurance carrier of Wetzel and/or Extreme Fishing, L.L.C.[9]

• February 15, 2018: Cross-Claim filed on behalf of St. Clair, Boudreau, and GMIC seeking defense and indemnity from AGCS pursuant to the Temporary Substitute Watercraft provision in the AGCS Policy.[10]  The Cross-Claim specifically alleges that GMIC and AGCS are co-primary insurers.[11]  AGCS' first notice of Boudreau's claim was upon service of this Cross-Claim.

• May 31, 2018:      GEICO responds to AGCS' written discovery requests reiterating that GMIC and AGCS are co-primary carriers for any negligence attributable to Boudreau.[12]

---

[4] *See* Rec Doc 1, 17-cv-03657.  This matter was transferred, Rec. Doc. No. 4, and consolidated with 17-cv-1545, Rec. Doc. No. 5, on May 12, 2017.
[5] *See* Memorandum in Support of Motion for Summary Judgment (Rec Doc 192) at Exhibit E; *see also* Exhibit 5, Notice of Loss / Correspondence.
[6] *See Id.*
[7] See Memorandum in Support of Motion for Summary Judgment (Rec Doc 192) at Exhibit G.
[8] *See* Rec Doc 192-7, Exhibit 7 to GEICO's Memorandum in Support of Motion for Summary Judgment.
[9] *See* Rec Doc 54.
[10] *See* Rec Doc 79.
[11] *See Id.* at p. 6, ¶ 31.
[12] *See* Exhibit 3, GEICO's Answers to Interrogatories at No. 14.

• July 11, 2018:     Magistrate Judge Roby rules that AGCS cannot seek discovery from GEICO until the AGCS Cross-Claim is in the record.[13]

• August 21, 2018:     Judge Vance rules that Extreme Fishing was the bareboat charterer of the SUPERSTRIKE.[14]

• September 5, 2018:     Judge Vance grants AGCS leave to file a Cross-Claim into the record against GMIC for defense and indemnity (via assignment / subrogation) of / for Wetzel and Extreme Fishing.  The Cross-Claim alleges coverage under the GMIC Policy's General Bareboat Charter Endorsement (that Wetzel / Extreme Fishing was, in fact, the bareboat charterer).[15]  GMIC has only today, September 18, 2018, filed a responsive pleading[16] and no discovery has occurred regarding this claim (per Judge Roby's ruling to wait until the claim was filed).

• September 6, 2018:     Considering an insurer's broad duty to defend in Louisiana (per the "eight corners rule" looking only at the plaintiff's First Supplemental and Amending Complaint for Damages[17] and the AGCS Policy), Judge Vance ruled that AGCS has a duty to defend Boudreau.[18]  The Court did not specifically address the issues of dual-coverage (although this was undisputedly the only position raised by GEICO up to this ruling) or from what point in time a defense by AGCS is owed (inception or notice).[19]  AGCS will seek clarification on these issues in a separate motion.  Judge Vance specifically recognizes the need for further information (*i.e.*, discovery) related to the indemnity issue.[20]

• September 10, 2018:     GMIC and on alleged behalf of Boudreau file the instant Motion for Summary Judgment seeking full defense of Boudreau (for the very first time – believed to be in response to AGCS' excess argument in its opposition memorandum to Boudreau's prior Motion for Partial Summary Judgment)[21] and indemnity (ignoring the need for discovery on both cross-claims per Judge Vance and Magistrate Judge Roby).[22]

---

[13] *See* Rec Doc. 166.

[14] *See* Rec Doc. 186.

[15] *See* Rec Doc 189.

[16] *See* Rec Doc 194.

[17] *See* Rec Doc 54.

[18] *See* Rec. Doc. 191.  Now that AGCS' Cross-Claim has been filed into the record and GEICO has today responded (September 18, 2018), AGCS will be submitting a similar motion on identical grounds against GMIC for defense of Wetzel and Extreme Fishing.

[19] Counsel for Boudreau also represents St. Clair and GMIC, to whom / which no defense is owed.  Further, Boudreau is only entitled to defense on a co-primary basis in accordance with GEICO's Cross-Claim.  He is not entitled to amounts associated with seeking coverage, etc., and should only be provided with defense from notice of his claim (service of GEICO's Cross-Claim).

[20] *See Id.*

[21] *See* Rec Doc 142 (June 12, 2018).

[22] *See* Rec Doc 192.

## II.  GEICO has judicially admitted primary coverage.

From inception of this litigation, GMIC has fully assumed Boudreau's defense without any reservations whatsoever (formal or informal).  Approximately one year after the litigation was initiated, GEICO filed its Cross-Claim against AGCS.[23]  In Paragraph 31, GEICO unequivocally stated that "[b]oth the GMIC and AGCS Policies **provide primary coverage** to Andre D. Boudreau for the February 12, 2017 incident involving M/V SUPER STRIKE."[24] GEICO has never sought to amend this judicial admission under the Federal Rules and this Court's amendment to pleading deadlines have twice since passed.  Further, in GEICO's written discovery responses dated May 31, 2018, it elaborated on its co-primary allegation as follows:

### INTERROGATORY NO. 14:

Please identify all evidence supporting the alleged losses claimed by you.

### ANSWER TO INTERROGATORY NO. 14:

**The GEICO Marine and AGCS policies provide co-primary coverage for Andre Boudreau operating M/V SUPER STRIKE on February 12$_{th}$ on a 50-50 basis**. **Therefore, any AGCS is liable for 50% of any and all damages attributable to the negligence of Andre Boudreau.** This includes the damages alleged by the Claimants for personal injuries, the $82,500 GEICO Marine paid Chase St. Clair for the loss of M/V SUPER STRIKE, and GEICO Marine's costs and expenses in defending Andre Boudreau from the date it retained the undersigned.[25]

GMIC cannot therefore claim that it is anything less than a co-primary carrier in connection with any negligence (while disputed) that may be assessed against Boudreau.

## III.  GEICO has waived any coverage defenses and is in conflict with Boudreau.

GMIC was aware of the terms of its own policy (and the AGCS Policy) prior to filing the Cross-Claim in February 2018.  In fact, the law provides that GMIC, as an insurer, is charged

---

[23] *See* Rec Doc 79.
[24] *Id* (emphasis added).
[25] Exhibit 3 at Answer to Interrogatory No. 14 (emphasis added).

with knowledge of the contents of its own policy.[26]  Further, when an insurer like GMIC has notice of facts that would cause it to inquire further, it has a duty to investigate those facts.  In failing to do so, as is the case here, the insurer [GMIC] "waives all powers or privileges which a reasonable search would have uncovered."[27]

An example of an insurer's waiver of coverage defenses is illustrated in *Steptore v. MASCO Construction Co., Inc.*[28]  In *Stepcore*, the Louisiana Supreme Court held that an insurer like GMIC waives its right to assert a coverage defense by assuming and continuing the defense of its insured despite facts indicating that it had a right to deny coverage for an accident.[29]  In so holding, the Court explained that "[w]aiver principles are applied stringently to **uphold the prohibition against conflicts of interest between the insurer and the insured which could potentially affect legal representation in order to reinforce the role of the lawyer as the loyal advocate of the client's interest**."[30]  The Court further explained:

> [the insurer] did not reserve its right to deny coverage under the policy prior to assuming the defense of [the insured].  Nor did [the insurer] provide [the insured] separate counsel in order to avoid a potential conflict of interest.  Accordingly, because the insurer assumed the defense without reserving its rights or otherwise protecting its interests and continued to represent the insured when its own interests were adverse to the insured, we find that [the insurer] waived any coverage defense it may have had under the policy.

In this case, GMIC undertook to provide coverage for Boudreau at the inception of this litigation.  Like the insurer in *Steptore*, GEICO (1) did not reserve its right to deny coverage under the GMIC Policy prior to assuming the defense of Boudreau, and (2) did not provide Boudreau with separate counsel in order to avoid a potential conflict in interest (as AGCS did based on its reservations of rights).  The result of GMIC's failures is the same as that stated by

---

[26] *Steptore v. Masco Constr. Co.*, 93-2064 (La. 8/18/94), 643 So.2d 1213, 1216.
[27] *Id.*
[28] Civil Action 93-C-2064 (La. 8/18/94).
[29] *See Id.*
[30] *Id* at 1216 (emphasis added).

the Louisiana Supreme Court in *Steptore*: "because [GMIC] assumed the defense [of Boudreau] without reserving its rights or otherwise protecting its interests and continued to represent [Boudreau] when its own interests were adverse to [Boudreau] . . . [GMIC] waived any coverage defense it may have had under the [GMIC] policy."[31]

GEICO's brand new position on cover (that it provides only excess insurance to Boudreau) is a dramatic departure from its prior admissions / allegations (*see* above) and is not only inconsistent with the AGCS Policy and GMIC Policy language, but also creates a conflict of interest between Boudreau and GMIC, who / which are represented by the same counsel in this litigation.   GMIC is now trying to limit cover under its policy despite (again) never having reserved any rights while providing for Boudreau's defense all along.   Limiting coverage to Boudreau in any respect that has never before been in dispute is obviously not in his best interest. This creates a fiduciary duty (legal and ethical) for GMIC to immediately withdraw its dual representation of itself and Boudreau, as their interests are no longer identical.

### IV.  The AGCS Policy is not ambiguous.

GEICO's claims, on alleged behalf of Boudreau for coverage and full defense, are not only moot (*i.e.*, waived), but they also fail in their reliance upon unsupported, contradictory, and unreasonable interpretations of the AGCS Policy.[32]   Specifically, the Other Insurance Clause of the AGCS Policy provides that "[i]f, at the time of a covered loss or damage, there is any other insurance that would apply to *the property* in the absence of this policy, the insurance under this policy will apply only as excess insurance over the other insurance."[33]   GEICO claims that the word "property" is ambiguous and restricts this to exclude temporary substitute watercrafts

---

[31] *Id.*
[32] *See* Exhibit 1 and Exhibit 4 (excerpts of the applicable AGCS Policy and GEICO Policy provisions, with comments).
[33] *Id.*

covered by other insurance.  The end result of this argument is GEICO's claim that "property," as used throughout the AGCS Policy, means only the KINGFISH (the scheduled vessel) and not vessels that are temporarily substituted in its place (*i.e.*, meaning temporary substitute vessels have more cover under the AGCS Policy than the actual scheduled vessel).  This is a totally unreasonable interpretation and is inconsistent with the law.

Undefined terms "must be given their ordinary, generally-accepted meanings."[34]  In *In re Katrina Canal Breaches Consol. Litig.*,[35] this Court noted the following:

> An insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. The judicial responsibility in interpreting insurance contracts is to determine **the parties' common intent.** If the language in an insurance contract is clear and explicit, no further interpretation may be made in search of the parties' intent.  The **court should not strain to find ambiguity where none exists.  However, if there is ambiguity in an insurance policy, it must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions.**  Ambiguity will also be resolved by ascertaining **how a reasonable insurance policy purchaser** would construe the clause at the time the insurance contract was entered. Cadwallader, the Supreme Court of the State of Louisiana set forth succinctly the most important guiding principles:
>
> **Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. An insurance contract should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion.** The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent.[36]

GEICO's interpretation of the word "property" in the AGCS Policy fails under this standard.

---

[34] *See* Rec. Doc. 192-1, p. 11, citing *Mangerchine v. Reaves*, 63 So.2d 1049, 1056 (La. App. 1st Cir. 3/25/11).
[35] 2009 U.S. Dist. LEXIS 46371, at *260-61 (E.D. La. May 29, 2009).
[36] *Id* (bold emphasis added) (internal citations omitted).

Merriam-Webster defines property as: "something owned or possessed."  The terms of the AGCS Policy support this generally-accepted use of the word.   In fact, the word "property" is contained in the definition section of the AGCS policy within the term "**property damage**:"

> **10. Property Damage** means physical injury to, destruction of, or loss of use of *tangible property.*

GEICO conveniently fails to mention this definition of "property" in its Motion.   Instead, GEICO claims that "property" is limited to one *specific* piece of property, the KINGFISH (not the SUPERSTRIKE).   Accepting GEICO's definition, however, would mean that "property damage," as used throughout the AGCS Policy, only refers to damage to the KINGFISH and not other tangible things (contrary to the policy terms).

The Temporary Substitute Watercraft provision "covers damages for **bodily injury** or **property damage** arising from the maintenance, use or control of a temporary substitute Watercraft."   Using GEICO's definition, this provision would only cover damage to the KINGFISH, even when the KINGFISH is out of service.   This interpretation is circular, nonsensical, and a prohibited attempt to restrict the AGCS Policy provisions "beyond what is reasonably contemplated by unambiguous terms."[37]   Accordingly, GEICO's claim that the Other Insurance Clause excludes temporary substitute watercrafts covered elsewhere fails.

### V.   AGCS was not provided with timely notice of the loss and further discovery is otherwise required regarding the applicability of the Temporary Substitute Watercraft provision.

GEICO's second attempt to craft ambiguity and evade the clear terms of the AGCS policy is likewise unavailing.   Louisiana law is clear that timely notice may be a condition precedent to coverage.   As explained by the Fifth Circuit Court of Appeal, "Louisiana law enforces provisions of insurance contracts which require notice as a condition precedent without

---

[37] *In Re Katrina*, 2009 U.S. Dist. LEXIS 46371, at *260-61 (E.D. La. May 29, 2009).

also requiring the insurer to make a particular showing of prejudice."[38]   For example, in *Bridgefield Cas. Ins. Co. v. River Oaks Mgmt.*,[39] the Fifth Circuit held that coverage was excluded when the policy plainly stated that "coverage will not be afforded . . . unless we are notified within thirty days."[40]   Like the policy in *Bridgefield,* the AGCS Policy in this case explicitly requires that the broker for AGCS be provided with notice of loss "within forty-eight hours after arrival in port . . . **and in no event will any claim be admitted by this company unless such notice in writing has been presented within sixty days from the occurrence of same**."[41]   The terms further provide that AGCS does not have a duty "to provide coverage unless there has been **full compliance**" with this notice provision.[42]

AGCS was not notified that the KINGFISH (originally reported as the M/V KINGFISH II) was out of use on February 12, 2017 (originally reported as being taken out of use the day before based on a transmission issue), or of the collision at issue, until May 2, 2017.  By that time, the KINGFISH had long been repaired and AGCS did not have an opportunity to inspect the vessel to directly determine whether it was or was not out of normal use because of an alleged covered loss under the Temporary Substitute Watercraft provision in the AGCS Policy. Such notice provided approximately three months after the incident does not comply with the notice terms of the AGCS Policy.  **Moreover, AGCS was not notified of Boudreau's claim under the AGCS policy until Boudreau filed his Cross-Claim approximately one year after**

---

[38] *MGIC Indem. Corp. v. Cent. Bank of Monroe, La*., 838 F.2d 1382, 1386 (5th Cir. 1988); *see* also, e.g., *In re Settoon Towing, L.L.C*., 720 F.3d 268, 277 (5th Cir. 2013) (holding that where policy holder is a sophisticated business and "immediate notice is an express condition precedent to coverage in the main body of the policy, failure to comply with the provision precludes coverage and prejudice need not enter the calculation" (quoting *Joslyn Mfg. Co. v. Liberty Mut. Ins. Co*., 30 F.3d 630, 633-34 (5th Cir. 1994) (internal quotation marks omitted)).
[39] 590 F. App'x 308, 313 (5th Cir. 2014).
[40] *Settoon Towing*, 720 F.3d at 278 (holding that precise phrase "condition precedent" is not necessary where language clearly establishes that notice is a condition precedent  to recovery and the insured is a sophisticated business).
[41] *Id* (emphasis added).
[42] *Id* (emphasis added).

**the incident**, well beyond the time for such notice to be provided (and more than sixty days after receiving the AGCS Policy, which could have been demanded under the Federal Rules long before).[43]

GEICO does not dispute that notice of Boudreau's claim was untimely. Yet GEICO seeks to evade the notice provision by making the inexplicable argument that Boudreau is an "insured" under the AGCS Policy, but not an "insured" bound by the notice provision. GEICO does not attempt to reconcile these inconsistencies. Instead, GEICO claims that the word "insured" is ambiguous depending upon if "the" or "an" or nothing appears before it. But a clear review of the policy reveals that "the" and "an" are used as mere articles to reference (not modify) the defined term "insured."

The AGCS Policy's notice provision unambiguously provides that coverage is not owed to an insured if notice of a claim is not timely provided. Accordingly, if Boudreau is an "insured" as alleged, which is subject to additional discovery on point (Temporary Substitute Watercraft provision, etc. – including possible experts as to why the KINGFISH was out of service and policy interpretation), his claim for coverage fails because it was undisputedly untimely. The applicable timeline is as follows:

- February 12, 2017: Incident

- May 2, 2017: First Notice of Claim to AGCS (Wetzel, not Boudreau) (AGCS did not have a chance to inspect the KINGFISH prior to repairs – reported as an engine / transmission problem - to determine why it was out of service at the time of the incident – *i.e.*, whether the condition was a covered loss under the Temporary Substitute Watercraft provision)

- November 27, 2017: GEICO receives AGCS Policy (but could / should have demanded much earlier)

- February 15, 2018: GEICO files its Cross-Claim (served thereafter)

---

[43] *See* Rec. Doc 117.

**VI.  Any alleged coverage to Boudreau under the AGCS Policy is excess.**

In Louisiana, "[a]n excess insurance policy provides coverage that begins only after a predetermined amount of primary coverage is exhausted."[44]  In this case, GMIC is admittedly Boudreau's primary insurer.  Section O entitled "Other Insurance" in the ACGS Policy provides: "[i]f, at the time of a covered loss or damage, there is any other insurance that would apply to the property in absence of this policy, the insurance under this policy will apply **only as excess insurance** over the other insurance."[45]  This Section applies **"to all coverage provided by this policy,"** which includes alleged coverage afforded by the Temporary Substitute Watercraft provision.[46]

On the other hand, the GEICO Policy's "Other Insurance" clause is not nearly as definitive as the AGCS Policy.  The GEICO Policy requires that "when this policy and any other policy covers on the same basis, either excess or primary, we will pay only our share."[47]  The GEICO Policy therefore contemplates a sharing of responsibility for coverage where two primary policies equally provide coverage for an insured.  Even if AGCS is found to be an insurer of Boudreau, the AGCS Policy would be in excess of the GEICO Policy, as the AGCS Policy provisions clearly and definitively require.  Further, even if notice had been timely and the Temporary Substitute Watercraft provision was triggered, which AGCS disputes at this time (for reasons addressed herein, those requiring discovery, and that will be addressed in further motion practice), insurance under the GEICO Policy would first have to be exhausted before AGCS would owe any defense to Boudreau.  Accordingly, as GEICO has admitted to the

---

[44] *Easton v. Chevron Indus., Inc.*, 602 So. 2d 1032, 1041 (La. Ct. App. 4 Cir. 5/28/1992), *writ denied*, 604 So. 2d 1315 (La. 1992), and *writ denied*, 604 So. 2d 1318 (La. 1992) (quoting *Lumbermens Mut. Casualty Co. v. Connecticut Fire Ins. Co.*, 239 So. 2d 472, 474 (La. Ct. App. 4 Cir. 6/6/1970)).
[45] *See* Exhibit 2 (emphasis added).
[46] *See Id* (emphasis added).
[47] *See* Exhibit 1.

existence and non-exhaustion of available primary insurance, the alleged coverage afforded to Boudreau through the Temporary Substitute Watercraft provision of the AGCS Policy, if any, would be excess to all other available insurance and not triggered unless and until such coverage is exhausted.

Alternatively, should this Court find that the GMIC Policy and the AGCS Policy both provide excess insurance under their respective Other Insurance Clauses, Louisiana courts "have found [such competing excess insurance clauses] to be irreconcilable and mutually repugnant and pro rate the loss between the two insurers."[48]

## VII.  Again, the Motion is premature, as discovery is required.

The improper use and premature filing of GEICO's Motion bears further addressing. Rule 56(d) of the Federal Rules of Civil Procedure authorizes a court to grant a continuance when the non-movant has not had an opportunity to conduct discovery that is essential to his/her/its opposition to a motion for summary judgment.[49]  Rule 56(d) is an important ingredient of the federal summary judgment scheme and provides a mechanism for dealing with the problem of premature summary judgment motions.[50]  Requests pursuant to Rule 56(d) "are generally favored and should be liberally granted."[51]

GEICO's Motion serves as an improper, back-door attempt to prematurely adjudge issues set forth in AGCS's Cross-Claim (particularly the other insurance / primary versus excess arguments as it relates to GEICO's Cross-Claim), which was only filed into the record thirteen days ago on September 5, 2018.  Further, as noted above, GEICO objected to any discovery on point and the Court would not allow any such discovery until AGCS' Cross-Claim was filed into

---

[48] *Yarbrough v. Fed. Land Bank*, 31815 (La. App. 2 Cir. 03/31/99); 731 So. 2d 482, 490.
[49] *Anderson v. Liberty Lobby, In*c., 477 U.S. 242, 250 n. 5, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).
[50] *Celotex v. Catre*t, 477 U.S. 317, 326, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).
[51] *Beattie v. Madison County School District*, 254 F.3d 595, 606 (5th Cir. 2001).

the record.  Now that GMIC has answered the Cross-Claim (as of today, September 18, 2018), discovery is ripe and can began.  For GEICO to prematurely seek to rush its Motion through knowing that discovery is undisputedly required is wholly improper.  As GEICO's Motion relates to AGCS' Cross-Claim, it is also worth noting that the GEICO Policy clearly covers bareboat charterers, which the charter of the SUPERSTRIKE was per Judge Vance's recent ruling, thereby providing full cover for the incident under the GEICO Policy (a motion on point will be submitted once this issue is fully fleshed out in discovery).  Therefore, to the extent the Motion infringes on this issue and others raised in the AGCS Cross-Claim, the Motion should be denied.

Again, even GEICO cannot genuinely contend that discovery is complete on the issues related to its Motion, as it has requested the corporate deposition of AGCS (which cannot be argued to purely relate to AGCS' Cross-Claim, since Magistrate Roby specifically limited such discovery until after the AGCS Cross-Claim was submitted into the record).  Likewise, now that GEICO has today (September 18, 2018) responded to AGCS' Cross-Claim, AGCS needs to conduct written discovery (again, previously objected to by GEICO as premature), notice the corporate deposition of GMIC, possibly conduct an examination under oath (EUO) and/or depose / re-depose Boudreau and St. Clair, potentially retain experts, and beyond.  Also, since GMIC failed to follow Louisiana law regarding conflicts of interests between insureds and insurers (not assigning separate counsel for each), current counsel is required to withdraw, allowing new counsel for Boudreau to enroll and potentially challenge GMIC's arguments limiting Boudreau's coverage.  On this point, for GEICO to argue there is no conflict because coverage will be provided to Boudreau one way or the other is not only inaccurate (*i.e.*, notice, exclusions, etc.), but runs afoul of the controlling jurisprudence, applicable rules, etc.

### VIII. <u>Conclusion</u>

In summary, (1) GEICO has judicially admitted primary coverage; (2) GEICO has waived any coverage defenses and is in conflict with Boudreau; (3) the AGCS Policy is not ambiguous; (4) AGCS was not provided with timely notice of the loss; (5) any alleged coverage to Boudreau under the AGCS Policy is excess; and (6) GEICO's Motion is premature, as discovery is required.  Accordingly the Motion for Summary Judgment submitted on behalf of GEICO, including on the alleged behalf of Boudreau, should be denied as a matter of law.

Respectfully submitted,

<u>/s/ Frederick W. Swaim III</u>
FREDERICK W. SWAIM III (#28242)
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802
Facsimile:  (504) 525-2456
fswaim@gallowaylawfirm.com
Counsel for *Allianz Global Corporate and Specialty Marine Insurance Company*

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all known counsel of record via the U.S. District Court's E-file system on this 18th day of September, 2018.

<u>/s/ Frederick W. Swaim III</u>
FREDERICK W. SWAIM III