## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  IN THE MATTER OF THE COMPLAINT OF TK BOAT RENTALS, LLC, AS OWNER AND OPERATOR OF THE M/V MISS IDA PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY<br><br>*Pertains to All Actions* | CIVIL ACTION<br><br>NO.  2:17-cv-01545<br>c/w 17-02446 and c/w 17-03657<br><br>SECTION "M" MAG. DIV. (4)<br><br>JUDGE ASHE<br><br>MAGISTRATE ROBY |

**MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EVIDENCE OF THE REQUIREMENTS OF 46 U.S.C. §8104 AND ANY ALLEGED VIOLATIONS OF 46 U.S.C. §8104**

**MAY IT PLEASE THE COURT:**

### Introduction

There are several references in the proposed Pretrial Order (Doc. 281) to alleged violations of 46 U.S.C. §8104(a) by Captain Andre Boudreau ("Captain Boudreau") and by Extreme Fishing, L.L.C. ("Extreme Fishing"). As explained more fully below, because the requirements of 46 U.S.C. §8104 are not applicable to the M/V SUPER STRIKE, any evidence regarding the requirements of 46 U.S.C. §8104, and of any purported violations of that statute, is simply not relevant to this action, and is, therefore, not admissible under federal law.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").  Accordingly, it is respectfully submitted that Extreme Fishing's motion should be granted and that any such evidence should be excluded from the trial of this matter.

1. **The requirements of 46 U.S.C. §8104 and its accompanying regulations are not applicable to uninspected passenger vessels such as the M/V SUPER STRIKE that carry no more than 6 passengers and operate less than 100 miles off the coast of the United States.**

In the Pretrial Order, a contested material fact relied upon by Plaintiffs in support of their claims against Captain Boudreau is that he allegedly "[v]iolat[ed] 46 U.S.C. §8104(a) by operating the M/V SUPERSTRIKE with only 5.5 hours of rest after working 18.5 hours the day before." Pretrial Order at p. 29 at ¶ 8 b) (11) (Doc. 281). Plaintiffs also contend that Extreme Fishing was negligent in allegedly "[a]llowing Captain Boudreau to operate a vessel on behalf of Extreme Fishing in violation of the rest requirements prescribed by 46 U.S.C. §8104(a)." Pretrial Order at p. 29 at ¶ 8 d) (3) (Doc. 281).

Similarly, TK Boat Rentals, LLC ("TK Boat Rentals"), in support of its contention that Boudreau and Extreme Fishing were negligent, seeks to show that Captain Boudreau had "[i]nadequate rest," Pretrial Order at p. 39 at ¶ 8 qqqq) (4) (Doc. 281), and that Extreme Fishing "[f]ail[ed] to monitor Captain Boudreau's rest adequately," Pretrial Order at p. 39 at ¶ 8 ssss) (1) (Doc. 281). TK Boat Rentals also argues in its factual narrative that "[w]hen Captain Boudreau woke up again around 5:30, he had committed his first violation of federal regulations because he hadn't had adequate sleep." Pretrial Order at p. 21 at ¶ 6 e) (Doc. 281). As explained below, the problem with each of these contentions is that 46 U.S.C. §8104 is not applicable to the M/V SUPER STRIKE.

The M/V SUPER STRIKE is a fiberglass-hulled vessel that is 31.8 feet long, 11.8 feet wide, and has a depth of 4.3 feet. See Certificate of Documentation (STC-000285) (attached as Exhibit A); Pretrial Order at p. 26 at ¶ 7 o) (Doc. 281). The gross and net registered tonnage of the M/V SUPER STRIKE is 5 tons. See Certificate of

Documentation (STC-000285) (attached as Exhibit A). Because of its small size, the M/V SUPER STRIKE is not subject to inspection by the Coast Guard. See 46 U.S.C. §3301[1] (listing the categories of vessels that are subject to Coast Guard inspection). Instead, the M/V SUPER STRIKE falls into the category of an "uninspected passenger vessel," which is statutorily defined to mean a vessel that is less than 100 gross tons and carrying not more than 6 passengers. See 46 U.S.C. §2101(51)(B)(i). It is undisputed that Captain Boudreau is licensed by the Coast Guard to operate uninspected passenger vessels of less than 100 gross registered tons within 100 miles from shore and carrying not more than 6 passengers. See Pretrial Order at p. 26 at ¶ 7 t) (Doc. 281); 46 C.F.R. §11.467(a)–(b); 46 U.S.C. §8903 ("A self-propelled, uninspected passenger vessel shall be operated by an individual licensed by the Secretary to operate that type of vessel, under prescribed regulations.").

The statute in question, 46 U.S.C. §8104, entitled "Watches," states in part:

(a)  An owner, charterer, managing operator, master, individual in charge, or other person having authority may permit an officer *to take charge of the deck watch* on a vessel when leaving or immediately after leaving port only if the officer has been off duty for at least 6 hours within the 12 hours immediately before the time of leaving.

46 U.S.C. §8104(a) (emphasis added). It should first be noted that the statute uses the term "off duty" and not the term "rest." Under federal regulations, although the term "off duty" is not specifically defined, the term "rest" is defined to mean "a period of time during

---

[1] While "passenger vessels," "seagoing motor vessels," and "small passenger vessels" are listed in the statute as categories of vessels that are subject to Coast Guard inspection, see 46 U.S.C. §§3301(4), (7) & (8) respectively, the statutory definitions for those categories of vessels clearly exclude the M/V SUPER STRIKE. In this respect, a "'passenger vessel' means a vessel of at least 100 gross tons," 46 U.S.C. §2101(31); a "'seagoing motor vessel' means a motor vessel of at least 300 gross tons," 46 U.S.C. §2101(43); and a "'small passenger vessel' means … a vessel less than 100 gross tons … [and] carrying *more* than 6 passengers," 46 U.S.C. §2101(45)(A) (emphasis added). In contrast, the M/V SUPER STRIKE is only 5 gross tons and does not carry more than 6 passengers.

- 3 -

which the person concerned is off duty, is not performing work (which includes administrative tasks such as chart correction or preparation of port-entry documents), and is allowed to sleep without interruption." 46 C.F.R. §10.07(b).  Given this definition, it is clear that a person can be "off duty" (i.e., not standing watch[2]), but still performing other work aboard the vessel.  Consequently, "off duty" and "rest" are not one in the same.

Nevertheless, one of the implementing regulations for this statute states, "Title 46 U.S.C. 8104 applies to the establishment of *watches* aboard *certain* U.S. vessels. The establishment of adequate watches is the responsibility of the vessel's master." 46 C.F.R. §15.705(a) (emphasis added).  Another implementing regulation states that "[t]he master must post watch schedules where they are easily accessible.  They must cover each affected person under paragraph (a) of this section, and must take into account the rest requirements of this section as well as port rotations and changes in the vessel's itinerary." 46 C.F.R. §15.1111(f).  The establishment of a "watch schedule," however, is clearly not applicable on a 32-foot long vessel such as the M/V SUPER STRIKE that has only a captain and a deckhand aboard, and leaves Venice in the morning and returns the same day.  Moreover, the regulations governing "watches" and "work hours and rest periods" are found in subpart K.  See 46 C.F.R. §15.1109 ("Watches"); 46 C.F.R. §15.1111 ("Work hours and rest periods").  Importantly, under federal regulations, "[o]wners and operators, and personnel serving on the following small vessels engaged exclusively on domestic, near-coastal voyages[3] are in compliance with subpart K of this

---

[2] "The Coast Guard interprets the term 'watch' to be the direct performance of vessel operations, whether deck or engine, where such operations would routinely be controlled and performed in a scheduled and fixed rotation.  The performance of maintenance or work necessary to the vessel's safe operation on a daily basis does not in itself constitute the establishment of a watch." 46 C.F.R. §15.705(a).

[3] The term "near-coastal" means ocean waters not more than 100 miles offshore from the U.S. and its possession.  See 46 C.F.R. §10.107(b).

part and are, therefore not subject to further requirements for the purposes of the STCW [Standards of Training, Certification and Watchkeeping for Seafarers] Convention: … (3) Uninspected passenger vessels (UPVs) as defined in 46 U.S.C. 2101(42)(B) [now 46 U.S.C. §2101(51)(B)]." 46 C.F.R. §15.105(g)(3); see also 46 C.F.R. §15.1101(a)(2)(iii) ("The following small vessels engaged exclusively on domestic voyages are not subject to any obligation for the purposes of the STCW Convention: … (iii) Uninspected passenger vessels as defined in 46 U.S.C. 2101(42)(B) [now 46 U.S.C. §2101(51(B)]."). Consequently, an uninspected passenger vessel such as the M/V SUPER STRIKE is exempt from the regulations governing "watches" and "work hours and rest periods" found in subpart K (46 C.F.R. §§15.1101–15.1113). Additionally, 46 C.F.R. §15.705, which states that "Title 46 U.S.C. 8104 applies to the establishment of watches aboard certain U.S. vessels," 46 C.F.R. §15.705(a), then goes on to list the requirements for dividing up personnel into separate watches for various categories of vessels, but makes no mention of uninspected passenger vessels of less than 100 gross registered tons. See 46 C.F.R. §15.705(b)–(f).

Lastly, there is no private right of action available under 46 U.S.C. §8104 for its violation, and a person who violates the statute is subject to a fine payable to the U.S. Government. See 46 U.S.C. §8104(i) ("A person violating subsection (a) or (b) of this section is liable to the United States Government for a civil penalty of $10,000."); see also Feemster v. BJ-Titan Services Co./Titan Services, Inc., 873 F.2d 91, 93 (5th Cir. 1989) (stating that "[t]he general purpose of this legislation is to promote maritime safety, but not with employees acting as private enforcers and as private attorneys general; the agent of enforcement is the Coast Guard."). Here, the Coast Guard investigated this matter and

no such action has been levied against either Captain Boudreau or Extreme Fishing. Moreover, Captain Boudreau, as the captain aboard the M/V SUPER STRIKE and the primary person that the statute, if applicable, would be designed to protect from overwork, specifically testified during his deposition that he was not tired or fatigued on the day of the collision.  See Order and Reasons at p. 20 (Doc. 186).

Given the foregoing, this Court should respectfully find that the requirements of 46 U.S.C. §8104 have no applicability to the M/V SUPER STRIKE.

**2.    This Court has twice previously rejected the argument that 46 U.S.C. §8104 was applicable to this action.**

In addition to the above, this Court, in making various rulings in this case, has already twice rejected the argument that Captain Boudreau failed to get adequate rest. In this respect, the Court first rejected the argument when it dismissed TK Boat Rentals' cross-claim against Extreme Fishing for negligent entrustment after finding that "[TK Boat Rentals] fails to establish how this statutory provision applies to a small fishing vessel like the SUPER STRIKE," Order and Reasons at p. 20 (Doc. 186), and after further finding that "[TK Boat Rentals] has not provided evidence establishing a connection between the collision and Boudreau's failure to sleep a full six hours the night before the trip," Order and Reasons at p. 20 (Doc. 186).  In rejecting TK Boat Rentals' argument, the Court specifically cited the deposition testimony of Captain Boudreau that "he did not feel tired or fatigued on the morning of the collision."  Order and Reasons at p. 20 (Doc. 186). Plaintiffs and TK Boat Rentals have produced no contrary evidence.  More recently, in deciding Extreme Fishing's summary-judgment motion on its right to limit liability, the Court similarly found:

> TK Boat Rentals also argues that Extreme Fishing had privity and knowledge of Boudreau's failure to get the hours of sleep mandated by statute. The Court is unpersuaded that Boudreau's sleeplessness is relevant to the incident for the reasons previously stated by the Court in denying TK Boat Rentals' negligent entrustment claim. R. Doc. 186 at 19–20.

Order & Reasons at p. 36 n.146 (Doc. 278).

### 3. Because 46 U.S.C. §8104 is not applicable to this matter, evidence of the requirements of that statute and of any purported violations of that statute is not relevant, and is, therefore, not admissible.

Under Federal Rule of Evidence 401, "[e]vidence is relevant if … it has any tendency to make a fact more or less probable than it would be without the evidence; and … the fact is of consequence in determining the action." Fed. R. Evid. 401(a)–(b). On the other hand, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402.

Here, Plaintiffs and TK Boat Rentals are attempting to show that Captain Boudreau and Extreme Fishing allegedly violated a statute (46 U.S.C. §8104) that has no applicability to this matter. Because the statute has no applicability to this matter, evidence of the requirements set forth in 46 U.S.C. §8104(a), and of any purported violation of those requirements, cannot prove the existence of a fact that "is of consequence in determining the action." Fed. R. Evid. 401(b). Accordingly, the evidence is not relevant and is, therefore, "not admissible." Fed. R. Evid. 402. Additionally, the admissibility of such evidence would unduly prejudice Captain Boudreau and Extreme Fishing because it could "lead the jury to rule against a party for the wrong reasons." Michael R. Fontham, Trial Technique and Evidence §4–9(a) (1995).

### Conclusion

Based on the foregoing reasons, Extreme Fishing respectfully requests that its motion in limine be granted, and that any evidence of the requirements of 46 U.S.C. §8104

and of any alleged violation of that statute by Captain Boudreau and Extreme Fishing be excluded from the trial of this matter.

        Respectfully submitted,

        **DAIGLE, FISSE & KESSENICH, PLC**

        /s/ Kirk N. Aurandt
        **MICHAEL W. McMAHON (#23987)**
        **KIRK N. AURANDT (#25336)**
        P.O. Box 5350
        Covington, LA  70434-5350
        Telephone: (985) 871-0800
        Facsimile: (985) 871-0899
        ***Attorneys for Defendant, Extreme Fishing, L.L.C.***