UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: TK BOAT RENTALS, LLC, as
owner and operator of the *M/V Miss Ida*,
for exoneration from or limitation of
liability

CIVIL ACTION

NO. 17-1545
c/w 17-2446 and 17-3657

SECTION M (4)

**<u>ORDER & REASONS</u>**

Before the Court is the motion of AGCS Marine Insurance Company ("AGCS") for summary judgment seeking definition of the scope, per this Court's Order and Reasons of August 7, 2019 (the "August 7, 2019 Order"),[1] of AGCS's responsibility for Andre D. Boudreau's defense costs.[2] GEICO Marine Insurance Company ("GEICO") opposes the motion.[3] For the following reasons, the Court denies the motion.

**I. BACKGROUND**

This consolidated action arises out of a boat collision. Patrick Beck booked a fishing trip out of Venice, Louisiana, with Extreme Fishing, LLC ("Extreme Fishing") through Troy Wetzel, Extreme Fishing's founder and sole member,[4] for February 12, 2017.[5] Wetzel generally books fishing trips by phone and hires a captain to operate one of the boats that he owns and leases to Extreme Fishing.[6] For Beck's trip, Wetzel hired Boudreau, a licensed captain whom he had observed at work on scores of occasions over the course of three or four years, to captain Wetzel's *M/V Kingfish*.[7] However, on February 11, 2017, the *Kingfish* became inoperable when

---

[1] R. Doc. 278.
[2] R. Doc. 282.
[3] R. Doc. 311.
[4] R. Docs. 107-6 at 1; 112-8 at 1; 113-1 at 1.
[5] R. Doc. 1 at 3 (Case No. 17-2446).
[6] R. Doc. 247-2 at 18-24.
[7] R. Docs. 87 at 6; 56-1 at 4-5, 8; 247-2 at 14, 16.

its port propeller inexplicably spun off into the marsh on another fishing trip.[8]  As a consequence, instead of using the *Kingfish* for Beck's trip, Wetzel asked whether Boudreau could secure another vessel.  Knowing that Chase St. Clair owned a fishing vessel, Boudreau received his permission to use the *M/V Super Strike* for the trip.[9]  Shortly after the trip began, the *Super Strike* collided on the Mississippi River with the *M/V Miss Ida*, a vessel owned by TK Boat Rentals, LLC ("TK Boat Rentals").[10]

On February 23, 2017, TK Boat Rentals filed a limitation-of-liability action related to the accident.[11]  On March 24, 2017, Beck and other passengers (collectively, "Plaintiffs") instituted an action for damages against several defendants, including Extreme Fishing, TK Boat Rentals, Wetzel, Boudreau, St. Clair, and GEICO (which Plaintiffs allege was St. Clair's insurer on the date of the collision).[12]  On April 19, 2017, St. Clair and Boudreau jointly filed a limitation-of-liability action.[13]  The two limitation actions and Plaintiffs' suit for damages were consolidated into this action.[14]  Plaintiffs eventually added a claim against AGCS, the alleged insurer of Wetzel[15] and Extreme Fishing.[16]

On February 15, 2018, St. Clair, Boudreau, and GEICO filed a crossclaim against AGCS, alleging that the Charter Value Vessel Policy AGCS issued to Wetzel covering the *Kingfish* (the "AGCS policy")[17] provided coverage to Boudreau for Extreme Fishing's use of St. Clair's

---

[8] R. Doc. 192-1 at 2.  Boudreau and Wetzel testified that they did not know why the propeller broke.  R. Docs. 192-2 at 4; 192-3 at 2-3.  Wetzel said the boat was "in great condition" and "working perfect the day before."  R. Doc. 192-3 at 2-3.
[9] R. Docs. 186 at 2, 11; 192-3 at 4; 192-10 at 1; 247-2 at 19-21; 247-3 at 23-24.  This Court previously determined that Extreme Fishing was the demise or bareboat charterer for the fishing trip.  R. Doc. 186 at 8-17.
[10] R. Docs. 107-6 at 7; 112-8 at 3; 113-1 at 3.
[11] R. Doc. 1.
[12] R. Doc. 1 at 7 (Case No. 17-2446).
[13] R. Doc. 1 (Case No. 17-3657).
[14] R. Docs. 6 & 16.
[15] The Court previously dismissed the claims against Wetzel in his individual capacity.  R. Doc. 87 at 10.
[16] R. Docs. 52 & 53.
[17] R. Doc. 117-2.

vessel.[18] On September 6, 2018, this Court issued an Order and Reasons (the "September 6, 2018 Order"), holding that AGCS has a duty to defend Boudreau under the AGCS policy.[19] This Court subsequently issued the August 7, 2019 Order, holding that GEICO and AGCS are Boudreau's co-primary insurers, responsible for their pro rata share of his loss arising out of this matter.[20]

## II. PENDING MOTION

AGCS now moves for summary judgment on three "practical questions" which it claims the Court left "unanswered."[21] First, AGCS argues that it "should only be responsible for 1/6 of any fee entries for work on behalf of Boudreau, [GEICO], and St. Clair," because AGCS is only responsible for half of Boudreau's defense as his co-primary insurer, and Boudreau has thus far been represented by the same counsel as GEICO and St. Clair.[22] Second, AGCS argues that it has "no responsibility for any fee entries by Boudreau's counsel for work pertaining to insurance coverage issues."[23] Last, AGCS claims it is not responsible for any amounts of Boudreau's defense "prior to filing his Cross-Claim against AGCS on February 15, 2018."[24]

In opposition, GEICO first argues that AGCS's motion is premature because it has filed a motion for reconsideration[25] of the August 7, 2019 Order.[26] GEICO further argues that "AGCS has cited no caselaw in which a court has allocated defense costs as AGCS suggests," nor has "AGCS presented … evidence that [GEICO's] defense costs were increased by defending St. Clair and Boudreau as opposed to just Boudreau."[27]

---

[18] R. Doc. 79.
[19] R. Doc. 191 at 10.
[20] R. Doc. 278 at 25.
[21] R. Doc. 282 at 1. The issues were not properly presented to the Court until the subject motion was filed.
[22] R. Docs. 282 at 1; 282-1 at 6.
[23] R. Doc. 282-1 at 6.
[24] *Id.*
[25] R. Doc. 303.
[26] R. Doc. 311.
[27] R. Doc. 311 at 3.

## III. LAW & ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id*. A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v.*

4

*Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

### B. Apportionment of Defense Costs

In the August 7, 2019 Order, this Court specifically stated that "GEICO and AGCS [are] co-primary insurers responsible for their pro rata share of [Boudreau's] loss," which they must "pay in proportion to their policy limits," both under Louisiana law and GEICO's pro rata clause

in its policy.[28] Louisiana courts have held that when two insurers' excess clauses are considered mutually repugnant, so that both insurers are held to be co-primary insurers, "the loss must be prorated among the two insurers." *See, e.g., Domangue v. Mr. Gatti's, Inc.*, 657 So. 2d 689, 696 (La. App. 1995). When the "policy limits are equal, each insurer is liable for 50%." *Id.* AGCS, however, has presented no briefing or evidence demonstrating whether its and GEICO's policy limits are equal, as would permit the Court to decide whether they are each responsible for 50% of Boudreau's coverage.

Neither has AGCS presented any evidence showing that GEICO's defense costs were increased by defending St. Clair and Boudreau as opposed to Boudreau alone. Under Louisiana law, when a "complaint alleges a single claim against the insured that is covered by the policy, the insurer must defend the ***entire lawsuit***, even those claims clearly excluded from coverage." *Alert Centre, Inc. v. Alarm Protection Servs., Inc.*, 967 F.2d 161, 163 (5th Cir. 1992) (citation omitted) (emphasis added). AGCS has not demonstrated that this principle is any different as applied to a complaint against multiple defendants, where some of those defendants are clearly excluded from coverage. As such, AGCS has not carried its burden on summary judgment on this issue.

C. **Legal Services Directed to Coverage Issues**

It is hornbook law that an "insurer is not responsible for the attorney's fees and costs incurred by the insured in contesting [insurance] coverage issues." 15 WILLIAM SHELBY MCKENZIE & ALSTON JOHNSON, III, LOUISIANA CIVIL LAW TREATISE, INSURANCE LAW AND PRACTICE § 7.7, at 641 (4th ed. 2012). Federal courts, however, "do not render advisory opinions." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 898 (5th Cir. 2000) (quoting *Life Partners, Inc. v. Life Ins. Co. of N. America*, 203 F.3d 324, 325 (5th Cir. 1999)). "A court should

---

[28] R. Doc. 278 at 25.

dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Id.* at 895 (quoting *New Orleans Public Serv., Inc v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987)). AGCS has not shown that Boudreau has made any claim against it for the cost of legal services associated with coverage issues. At present, then, AGCS's issue is purely abstract, and there is no current case or controversy on this question. Therefore, this issue is not ripe for resolution.

### D. Defense Costs Before Boudreau's Crossclaim

In Louisiana, "an insurer's duty to defend arises whenever the pleadings against the insured disclose a ***possibility*** of liability under the policy." *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987) (emphasis added). This obligation applies to persons who are not named insureds, even when they are ultimately found not to be insured, so long as they are considered insured under the allegations in the plaintiff's complaint. *See Steptore v. Masco Constr. Co.*, 643 So. 2d 1213, 1218 (La. 1994). The insured's duty does not arise, though, "until notice of litigation." *Cobb v. Empire Fire & Marine Ins. Co.*, 488 So. 2d 349, 350 (La. App. 1986) (citation omitted).

As soon as Plaintiffs filed the complaint against Boudreau (March 24, 2017),[29] there was a possibility of liability under the AGCS policy. It appears that AGCS did not have notice of the suit, however, until Plaintiffs amended the complaint and added a claim against it on January 2, 2018.[30] At this point, AGCS should have known that it would possibly have to defend Boudreau. As the September 6, 2018 Order explains, the AGCS policy's "Temporary Substitute Watercraft" provision would appear to cover the *Super Strike*, but regardless, the "complaint also sufficiently asserts that Boudreau was functioning as an 'insured' under the terms of the policy,

---

[29] R. Doc. 1 (Case No. 17-2446).
[30] R. Docs. 52 & 53.

because it states that Boudreau was captaining the SUPERSTRIKE in the course of his employment for Wetzel and Extreme Fishing."[31] AGCS was therefore on notice of a claim possibly involving the defense of Boudreau at least by January 2, 2018, when it was brought into the suit, not on February 15, 2018, when St. Clair, Boudreau, and GEICO filed their crossclaim, as AGCS urges.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that AGCS's motion for summary judgment (R. Doc. 282) is DENIED.

New Orleans, Louisiana, this 25th day of September, 2019.

                                              BARRY W. ASHE
                                              UNITED STATES DISTRICT JUDGE

---

[31] R. Doc. 191 at 9.